## 7850.   BROOKS v. THE STATE.

1. The law as to the presumption of innocence was given in charge to the jury; and the court did not err in not giving an instruction, not requested, that no presumption against the accused arises from an accusation or indictment.

2. Where the defendant's counsel, in argument to the jury, stated that in the event of the defendant's conviction he would be fined and the solicitor-general would receive the money, an instruction by the court, that it was "no concern of the jury who would receive the money in the event the defendant should be convicted," was not subject to exception on the ground that it impressed upon the jury that he should be convicted.

3. The instructions as to the weight to be given to direct and circumstantial evidence were not subject to the exceptions taken. ,

4-6. The instructions as to what constitutes a "place of business" within the meaning of the prohibition law, and as to keeping on hand "liquor" at a place of business, were correct and contained no expression or intimation of opinion that the accused kept on hand at his place of business, or sold, intoxicating liquor.

7. The instructions to the jury as to the sale of liquor were not unauthorized by evidence.

8. It was proper to admit in evidence the contracts for a telephone in the place alleged to be the place of business of the accused, one signed by him, and the other signed in his name by another person and being a continuance of the former contract.

9. The court did not err in allowing a witness to testify that he bought at the defendant's place "something that looked like whisky."

10. Testimony that the witness thought that the place of business in question was owned by a named person, not the accused,—that he "so understood it,"—was properly excluded as merely an opinion or conclusion of the witness.

11. The admission of testimony as to telephone calls for the accused, received on the telephone at the place of business in question, was not ground for a new trial.

12. The court did not err in admitting in evidence whisky bottles and their contents, over the objection that they were obtained by illegal search and seizure, nor on the ground that they were not properly identified.

13. The evidence authorized the verdict of guilty.

DECIDED NOVEMBER 16, 1916.   REHEARING DENIED DECEMBER 8, 1916.

Accusation of misdemeanor; from city court of Macon—Judge Guerry.   September 8, 1916.

*John R. Cooper,* for plaintiff in error.

*John P. Ross, solicitor-general,* contra.

HODGES, J.   Brooks pleaded not guilty to an accusation charging in one count that he "unlawfully did sell and barter for a valuable consideration, directly and indirectly, and keep on hand at his place of business, alcoholic, spirituous, malt, and intoxicat-

ing liquors, and other drinks, which, if drunk to excess, will produce intoxication." He was convicted, his motion for new trial was overruled, and he excepted. The State's evidence was, in substance, as follows: The agent of the owner of a certain storehouse in the city of Macon testified, that from October 1, 1915, to January, 1916, the accused rented the premises, and that he continued in the place after January 1, 1916. The place had a sign: "Drink at Lawrence's." The rent contract covered downstairs, upstairs, and the upstairs next thereto. The staircase went from inside the store and from the alley. The entrance on the alley had a staircase. Harden rented the barber shop, but Brooks paid the rent, as he rented the place. The accused paid the rent to the witness personally, but the witness could not say who kept the place. The regular rent collector testified that the place was kept by the accused, and the rent was usually sent to the rental agency; he collected it one month, but did not know who paid it. There was evidence that the accused signed the contract for the telephone in the place. There were two telephone contracts, and the last one was signed by some one who said he represented Brooks. It was shown by the evidence that whisky was bought and sold at this place from 1915 to March 11, 1916, and that it was served over the counter. One Stanley was the barkeeper and sold the whisky, and Brooks was there when Stanley sold some whisky. A witness testified that it was Brooks's place, and that he saw whisky sold there during the time indicated. The barkeeper poured out the whisky, and it was sold several times. Another witness testified that it was Brooks's place and that he had seen "something that looked like whisky sold there," and "had seen whisky sold in there." It had the appearance of whisky and was served in whisky glasses. The witness thought he had bought whisky from Brooks, Stanley, or Dewberry. His recollection was very indistinct, but he thought he had bought whisky from the parties named. He had seen whisky in there several times. Dewberry testified that the license was in his name, and that Brooks agreed to lease it for him and to put Dewberry in charge of the place. Witness put the money in the safe, but did not know who took it out. He and Brooks were the only ones who had access to the safe. Sometimes he took the money out of the register, sometimes Brooks did, though the witness never saw Brooks do so. Witness said he did not want to

answer whether he had seen whisky in the place. Four or five pints were there when the officers came. Sometimes Brooks carried the store key, and sometimes the witness carried it. Brooks and the witness purchased the cigars and soft drinks for the place, and the witness said he did not know who paid, though he had bought "coca-cola." It was shown that the chief of police closed the place, and that it was closed when the detectives came. It was further established that Brooks sold beer from behind the counter, and sold something from behind the counter that looked like whisky, served in glasses and bottles. The sign over the place was "Brooks' Place," and he was in the place during the period the sign was there. Brooks on one or two occasions gave orders to the serving boy, and was seen to have opened the cash register, according to the testimony of one of the State's witnesses. The witness stated that the place was known as Stanley's place. A witness stated that he took down a sign in front of the place, reading: "Drink with Brooks." The sign had been there a long time, and Stanley was there four years. A police officer testified that he knew Brooks's place, and that when he visited it just prior to the filing of the charge, he found Brooks and two negro boys there, and found from six to ten half-pints of whisky in the iron safe in the beer saloon where the counter was, and turned the whisky over to the sheriff's office. Some papers were in the safe. Upstairs certain bottles and cases marked "whisky" were found. While the officer was there the telephone rang and called for Brooks, and the witness said he was not in. The witness knocked on the door to get in, and eight or ten people came to the door, and when they saw the police officer they went out. The papers referred to and the whisky were placed in a basket and turned over to the sheriff. Brooks gave Huhn the combination to the safe after he had said he did not know the combination. The inside door of the safe was broken open and the papers found. A search warrant had been issued for the place and was probably read to Brooks, though the witness was not certain as to that. The sheriff identified the basket and bottles as being the articles received from the police officer, and they were admitted in evidence. Dewberry testified that the accused asked him if he wanted to run the place, and that he, Dewberry, did not have any money to pay the license and did not furnish any. According to testimony, cool beer was found when the

officers came. The accused stated that he had been out of the beer business two years the first of January preceding the trial, and had gone into the automobile business; that he sold the place in 1914, and in 1915 rented it to Stanley; that he had not sold any liquor; that he met his friends there, but had nothing to do with the place; that he was as innocent as the jury; that Dewberry was mistaken in his testimony; that he had nothing to do with any whisky in the place; that he did not know how it got there; that Dewberry knew the combination to the safe, and that he went to get him to open it. Seyen pint whisky flasks labelled "Belle of Jefferson Whisky," each with unbroken seal over the stopper and each full of liquid contents having the color and appearance of rye whisky, and several envelopes addressed to J. B. Brooks, the contents of which related to fire insurance and other business matters, were admitted in evidence.

1. In the first special ground of the motion for a new trial it is complained that the trial judge did not instruct the jury that an accusation or bill of indictment raised no presumption against the accused. No timely written request was made for such an instruction, and the exception is without merit.

2. The instruction that "it is no concern of the jury who would receive the money in the event the defendant should be convicted" is complained of upon the ground that it impressed upon the jury that the defendant should be convicted. The judge added a note to this ground, as follows: "Counsel for the defendant in his argument stated that in the event of the defendant's conviction, he would be fined simply, and that the solicitor-general would receive the money." There is no merit in this ground of the motion.

3. A witness testified: "My best recollection is I have bought whisky in that place during the period asked about. I have got beer in there, and I think I have got whisky in that place during the period asked about. I have got beer in there and I think I have got whisky in there. I bought it from Brooks or Stanley or Dewberry, one of them; my recollection is indistinct as to which. My recollection is very indistinct, but it is that I have bought whisky in there from each of them. My recollection is clear that I have seen whisky in there a number of times. I think it was quite frequent to see whisky sold in there. It is my recollection that it was seen several times." From a perusal of the testimony

above set out it will be observed that the witness testified that his best recollection was that he had bought whisky in that place, and that he had bought it from Brooks, Stanley, or Dewberry, but that his best recollection was that he had bought whisky in there from each of them. He was clear in his statement that he had seen whisky in that place a number of times. After all, a witness can only testify to the best of his knowledge and belief, and the weight to be attached to evidence of this character is a matter entirely for the jury. This testimony would seem to take the case out of the rule as to circumstantial evidence, and in the light of the testimony it would seem that any charge by the court on circumstantial evidence could not have been harmful to the accused. There is no merit in the exception to the charge as to the weight to be given to direct and circumstantial evidence, the jury being fully and correctly instructed on reasonable doubt and circumstantial evidence.

4. The court instructed the jury as follows: "I charge you that by 'place of business' is meant public place of business; not public in the sense that it belongs to the public; not public in the sense that it is done with any great degree of publicity; but it must be a place to which the public is invited, either expressly or by implication, to come for the purpose of trading or transacting business; and a place of that character to which the public is invited, where business is carried on, is a public place of business; it makes no difference whether the amount of business be great or small. By 'public' is meant that the public is invited to it and has access to it for a purpose within the scope of the business that is carried on." This excerpt is a correct definition of a "place of business" within the meaning of the prohibition law as construed by the courts, and is not subject to the exception "that the judge assumed that the whisky in question was sold at the defendant's place of business."

5. Exceptions are taken to the following instructions: "You will notice the verbiage of the statute; it says 'keeping on hand,'— to keep on hand at their place of business. For one to keep liquor in his particular place of business in a building, if he has more than one, would be within that statute; but I charge you that it is not necessary for the liquor to be kept in any particular room, or kept in the place where the main business is kept or carried on, or in a public place; that is to say, it is not necessary for it to be kept

openly or publicly. It may be kept secretly; it may be kept in another room on the same floor of the building; it may be kept in another room on a different floor of the same building; but if it is kept in connection with the business, easily accessible to the men or persons operating the business,—if it is kept in that way, it does not matter whether it is in the same room or on the same floor; in-deed, it would not be necessary for it to be in the same building; if it is kept at the place of business, convenient to it, in connection with it, so as to be available, and in a way indicating that it was intended to be available and used in connection with the business (and I charge you that it would not be necessary, for it to be such a place of business, to show any sale of any liquor), the keep-ing of it there is a violation of the law." It was contended that the court in this instruction assumed that the accused kept on hand at his place of business liquor for sale. It will be observed that the court used the expression, "for one to keep liquor in his particular place of business in a building, if he has more than one, would be within that statute." The language used was not an expression or intimation of opinion as to the guilt of the accused, and in no way assumed that he kept on hand at his place of business liquor, contrary to the statute. The definition of the term "place of busi-ness" is in line with the construction of this court in numerous cases, and there was no error in so defining it to the jury. Gener-ally the term "liquor" implies intoxicating liquor (*Carswell* v. *State,* 7 *Ga. App.* 198, 68 S. E. 488; *Smith* v. *State,* 17 *Ga. App.* 118, 86 S. E. 283; *Gates* v. *State,* 18 *Ga. App.* 94 (3) (88 S. E. 910)); and the jury could not have misunderstood the meaning of this word as used in the charge. It is proper to charge the jury, as a matter of law, that whisky is intoxicating. There was no error in the excerpt upon the grounds taken.

6. The court charged the jury: "If, up to the time when it was found, business was still carried on there, although it may have been to a more limited extent, although it may have been done pri-vately, or more privately than theretofore, but was nevertheless carried on, the liquor was kept there, and the business was carried on in the building by the defendant at the same place, selling to some extent and carrying on business to some extent as he did before, it would still be his place of business, however limited, and although not so publicly as before, provided it was still a place

which the public was expressly or impliedly invited to visit for the purpose of trade." Exception was taken to this part of the charge, on the ground that the judge thereby "expressed his opinion in regard to the facts, with no evidence in the case that the business was carried on to a limited extent," and that "the court decided that this was the defendant's place of business, instead of leaving it to the jury to decide." There is no merit in this exception.

7. Selling and keeping on hand being charged in one count, the following instruction was not error: "Or if you believe, beyond a reasonable doubt, from the evidence, that at any time within a period of two years prior to the date of this accusation, he sold any person any quantity of liquor in this county, you would be authorized to find him guilty." This is not subject to the exception that it was not authorized by the evidence.

8. There was no error in admitting in evidence the contracts for a telephone in the place in question, one signed by the accused and the other signed "J. B. Brooks, per Stanley;" it appearing that the latter contract was but a continuance of the former, for the same place and telephone.

9. A witness may testify as to the appearance of any article bought by him, and to permit a witness to say to the jury, "I bought something that looked like whisky," was not error.

10. There was no error in excluding the following testimony: "I think Stanley owned the place of business; I so understood it;" this being merely the individual opinion and conclusion of the witness.

11. It appeared that the defendant made the original contract with the telephone company for the telephone at the place of business in question, and that the second contract with the company was regarded by the agent of the company as a continuance of the first contract; and the evidence that the defendant was called over the telephone at that place several times was admissible, as a circumstance tending to throw light on the issue as to his guilt.

12. The following exceptions were taken: "The court erred in admitting, over objection of defendant's counsel, the following testimony: 'The basket and contents consisting of whisky is admitted in evidence.' The defendant objected to the basket and contents, though said to contain whisky, because in the first place it was not properly identified. Defendant also registers objection

to, the testimony upon the ground that the property was obtained as the result of an illegal search and seizure, which was in contravention of the State and the United States constitutions, which tended to force defendant to furnish evidence against himself. The defendant objected to the testimony further upon the ground that it was in contravention of the constitutional rights of the defendant." The articles were sufficiently identified; and the constitutional question has been so often adjudicated by the Supreme Court and this court that we deem it unnecessary to discuss the question. See *Calhoun* v. *State*, 144 *Ga.* 679 (87 S. E. 893).

13. From a careful reading of the record this court is of the opinion that the verdict is authorized by the evidence.

*Judgment affirmed.*