Ruth E. ERHARDT, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 4–882A239.

Court of Appeals of Indiana, Fourth District.

May 29, 1984.

Rehearing Denied July 11, 1984.

Kenneth R. Scheibenberger, Lebamoff & Associates, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Defendant-appellant Ruth E. Erhardt was convicted of public indecency, a class A misdemeanor, (IND.CODE 35-45-4-1).[1] She seeks reversal on appeal claiming:

1. the evidence was insufficient to sustain the court's judgment, and

2. nudity alone cannot constitutionally be the basis for a criminal conviction.

Because we conclude there was insufficient evidence to support the conviction, we reverse.

### FACTS

Erhardt, a waitress, was one of eight contestants in a "Miss Erotica of Fort Wayne" contest held at the Cinema Blue Theatre in that city on February 25, 1982. The competition, which was open to spectators 18 years of age or older who paid an admission fee, consisted of several parts, including a question-and-answer segment, a bathing suit contest and a dance competition. Erhardt was arrested following the last-mentioned portion of the competition by Fort Wayne Police Officer Dennis Anspach, who attended the event after seeing an advertisement in the local newspaper. According to testimony from Anspach and fellow investigating officer Rick Layton, Erhardt danced to two songs. During the first, she wore a short negligee and panties. For the second number, Erhardt removed these articles of clothing and completed her performance wearing a g-string and scotch tape criss-crossed over her nipples.

### DECISION

At the outset we concede the evidence presented by the police officers, and apparently accepted by the court as to Ms. Erhardt's appearance, established that during her dance she exposed her buttocks and breasts as prohibited by our statute. However, and most significantly, the officers described her performance as dancing, without further elucidation. There was no attempt to prove or even suggest that the dance was lewd or obscene or merely a pretense for displaying her body.

We believe that, under the facts of this case, Erhardt is correct in her argument that the evidence presented to the trial court was insufficient to convict her of public indecency under IND.CODE 35-45-4-1. While the public indecency law appears to proscribe any nude appearance, our supreme court has indicated the statute has a narrower scope and serves to criminalize only certain public conduct which is not primarily expressive in nature and is therefore unprotected by the First Amendment. It does not apply to activities such as the theatrical appearance involved herein, which may not be prohibited absent a finding of obscenity.

This restrictive view of IC 35-45-4-1 was emphasized in *State v. Baysinger*, (1979) Ind., 397 N.E.2d 580 (Hunter and DeBruler, JJ. dissenting), where our supreme court upheld the statute against a challenge that it was unconstitutionally overbroad. Justice Pivarnik, writing for the *Baysinger* majority, indicated that public nudity, in

---

1. IND.CODE 35-45-4-1 reads in part as follows:
 "Sec. 1. (a) a person who knowingly or intentionally, in a public place: ... (3) appears in the state of nudity; ... commits public indecency, a Class A misdemeanor.

(b) 'Nudity' means the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, the showing of the female breasts with less than a fully opaque covering of any part of the nipple, ...."

and of itself, is not entitled to constitutional protection and could therefore be prohibited without a finding of obscenity. However, he cautioned that "it may be constitutionally required to tolerate or to allow some nudity as a part of some larger form of expression meriting protection, when the communication of ideas is involved." *Id.* at 587. Justice Pivarnik indicated the public indecency statute would not apply to proscribe print and video materials and live performances which, by reason of their content, amounted to more than mere nudity. In those instances, Justice Pivarnik observed the applicable law is contained in IND.CODE 35–30–10.1–1, et seq., which prohibits, among other things, obscene performances, and sets forth criteria to aid in the determination whether a particular matter of performance is obscene. Justice Pivarnik noted:

"[T]he application of obscenity considerations to books, films and certain types of live musical or theatrical performances or production seems more appropriate. *In those settings, nudity, which may or may not be obscene, may be judged as are all other components of such materials or performances, in the context on which it is presented.* There is sufficient content to enable courts to determine whether or not such nudity is obscene and therefore prohibited or whether, taken in its context, it is not obscene and requires protection as expression." (Emphasis added.)

*State v. Baysinger, supra* at 586.

The *Baysinger* court found that IC 35–45–4–1 was not unconstitutionally overbroad because it was not aimed at nudity which involved First Amendment rights. Justice Pivarnik instructed:

"Our case law has restricted and defined the type of conduct which has been prosecuted under public indecency statutes. Our statutes provide for procedures and standards to be used in a determination of obscenity when required for different materials or performances. Under these facts the argument that Ind.Code § 35–45–4–1 (Burns 1978) is overbroad must fail."

The concept that public nudity may be permissible in some contexts as a protected expression under the First Amendment was more recently discussed in *Sedelbauer v. State,* (1981) Ind., 428 N.E.2d 206 (Hunter, J. concurring in result only; DeBruler, J. dissenting), wherein Chief Justice Givan, in approving as proper and lawful the appearance of a nude art model, remarked:

"The First Amendment guarantees each citizen the freedom of speech and publication to accomplish these ends. [instructing children and adults by explicitly depicting the functions of sexual arousal and intercourse itself, and, within the definitions of art, depicting the naked human in various postures calculated to be pleasing to the viewer and to possess cultural value. *Id.* at 208.] This freedom, however, does not give license for the utterance or publication of any and every conceiveable variation of the subject matter, if that utterance or publication impinges upon the freedom of others to enjoy life in an acceptable manner according to the standards of the community.

"It is not the subject matter that is obscene in any situation, it is the manner in which the subject matter is presented that constitutes obscenity. For instance, a *nude model* may be presented to an art class to aid in the instruction of the students as to how to depict the nude human form. *The model may be presented in a wholly acceptable manner and not be considered as lewd or obscene.* However, one could take that same model and by a slight change in pose and setting transform that same person into a lewd and obscene object. The difference would be readily discernible to any member of society." (Emphasis added.)

*Id.* at 208. Thus, our supreme court in *Baysinger* and again in *Sedelbauer* has recognized that not all nudity or exposure would be *per se* unlawful. Likewise, in *Schad v. Borough of Mount Ephraim,* (1981) 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671, wherein a zoning ordinance

excluded from the Borough all live entertainment, including nude dancing, the United States Supreme Court instructed:

"Entertainment, as well as political and ideological speech, is protected: motion pictures, programs broadcast by radio and television and live entertainment, such as musical and dramatic works fall within the First Amendment guarantee ... Nor may an entertainment program be prohibited solely because it displays the nude human figure. 'Nudity alone' does not place otherwise protected material outside the mantle of the First Amendment.... Furthermore, as the state courts in this case recognized, *nude dancing is not without its First Amendment protections from official regulation.*" (Citations omitted.)

*Id.* at 65–66, 101 S.Ct. at 2181. Later in its opinion, the Court concluded "[h]ere the Borough totally excludes all live entertainment, including nonobscene nude dancing that is otherwise protected by the First Amendment." *Id.* at 76, 101 S.Ct. at 2186.

Further, in *Doran v. Salem, Inn, Inc.,* (1975) 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648, a preliminary injunction was issued to enjoin an enforcement of an ordinance of the town of North Hempstead, New York, which banned topless performances in all public places. The Supreme Court sustained the preliminary injunction. In so doing, the Court first distinguished *California v. LaRue,* (1972) 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (wherein the Supreme Court upheld the regulation on nude entertainment promulgated by the California Alcoholic Beverage Control Board) stating "that the broad power of the State to regulate the sale of liquor, conferred by the Twenty-First Amendment, outweighed any First Amendment interest in nude dancing." 422 U.S. at 932,[2] 95 S.Ct. at 2568. In contrast, the Court noted, the North Hempstead ordinance applies "not merely to places which serve liquor, but to many other establishments as well." *Id.* at 933, 95 S.Ct. at 2569. Justice Rehnquist, speaking for the majority, concluded that the town did not "raise any other legitimate state interest [beyond the interest in regulating the sale of alcohol] that would counterbalance the constitutional protection *presumptively* afforded to activities which are plainly within the reach [of the ordinance]." *Id.* at 934, 95 S.Ct. at 2569. (Emphasis added.)

In making our decision, we also take note of *Adims v. State,* (1984) Ind.App., 461 N.E.2d 740 (Garrard, J. concurring) a

---

**2.** A more recent Supreme Court case reaffirming this principle is *New York State Liquor Authority v. Bellanca,* (1981) 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357, which, in upholding a New York statute prohibiting nude dancing in establishments where liquor was sold, concluded "[w]hether artistic or communicative value may attach to topless dancing is overcome by the State's exercise of its broad powers arising under the Twenty-first Amendment...." *Id.* at 718, 101 S.Ct. at 2602.

We note that on remand (*Bellanca v. New York State Liquor Authority,* (1981) 54 N.Y.2d 228, 445 N.Y.S.2d 87, 429 N.E.2d 765, U.S. cert. den. 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300), the New York Court of Appeals held that ordinances prohibiting topless dancing in liquor establishments violated the state constitution's free speech guarantees, concluding:

"[T]he guarantee of freedom of expression set forth in our State Constitution is of no lesser vitality than that set forth in the Federal Constitution (considered without reference to the curtailing effect of its Twenty-first Amendment). Our State Constitution contains no provision modifying the State guarantee of

freedom of expression corresponding to what the Supreme Court has held is the diminishing effect of the Twenty-first Amendment with respect to the Federal guarantee of freedom of expression .... Nor is there anything in the Twenty-first Amendment itself which inhibits or modifies the right of freedom of expression assured by our State Constitution." 54 N.Y.2d at p. 230, 445 N.Y.S.2d at p. 90, 429 N.E.2d at p. 768. The New York Constitution provides:

"Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

N.Y. Const. art I, § 8.

Our constitution instructs:

"§ 9. Free speech and writing.—No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible."

Ind. Const. art I, § 9.

recent opinion wherein this court held that girls dancing nude or partially nude in an adult bookstore atmosphere where men dropped $.25 into a timing machine to watch them perform was proscribed by our public nudity statute inasmuch as the dancing took place in a public place. The majority did not discuss the effect of *Schad v. Borough of Mount Ephraim, supra,* although Judge Garrard in his concurring opinion, apparently concluded that the *Schad* majority "appears to simply beg the question as to whether live nude dancing necessarily involves free speech-expression." *Adims, supra,* concurring opinion, p. 744. However, Judge Garrard noted that the *Baysinger* court "distinguished between live dancing, which it felt might be no more than conduct, and nudity portrayed in books, films or plays, which it fel[t] had to be interpreted in the context of the total presentation." (Concurring opinion, p. 744) Thus, we can perhaps infer from Judge Garrard's language that the *Adims* court would agree that *Baysinger* distinguishes "some forms of live entertainment" as protected speech outside the proscription of the public nudity statute but would find the facts presented in the case before it did not comprise an appropriate theatrical setting.

In regard to the legal effect of the *Schad* opinion on the issue of nude dancing, we find strong support for our decision in *Morris v. Municipal Court for San Jose—Milpitas Judicial District of Santa Cara County,* (1982) 32 Cal.3d 553, 186 Cal.Rptr. 494, 652 P.2d 51, wherein the California Supreme Court discussed *Schad* and a number of other recent state and federal opinions which have confirmed that dance, including nonobscene nude dancing, is a form of constitutionally protected expression. The *Morris* court struck a county ordinance which prohibited nude entertainment in any public place except for theaters, concert halls or similar establishments primarily devoted to theatrical performances as unconstitutionally overbroad. In making its decision, the court stated:

"From our review of the foregoing decisions, we draw vital conclusions. (1) A ban on nude dancing cannot be sustained on the theory that it regulates only conduct and does not impinge upon protected speech. Nonobscene nude dancing cannot be barred without, in some cases, infringing upon constitutionally protected expression.[11]

(2) An enactment prohibiting nonobscene nude dancing which extends beyond establishments serving alcohol is presumptively overbroad."

[11. *In re Giannini* (1968) 69 Cal.2d 563, 567–568, 72 Cal.Rptr. 655, 446 P.2d 535, stated that '[a]lthough the United States Supreme Court has not ruled on the precise question whether the performance of a dance is potentially a form of communication protected against state instrusion by the guarantees of the First and Fourteenth Amendments to the federal Constitution, the very definition of dance describes it as an expression of emotions or ideas. Thus, "Dancing consists in the rhythmical movement of any or all parts of the body in accordance with some scheme of individual or concerted action which is expressive of emotions or ideas." (7 Encyclopaedia Britannica (1945) pp. 13–14) ... "The dance is perhaps the earliest and most spontaneous mode of expressing emotion and dramatic feeling; it exists in a great variety of forms and is among some people connected with the religious belief and practice, as among the Mohammedans and Hindus." (2 The Century Dictionary and Cyclopedia (1914) p. 1450.)'

In the years after *Giannini,* the Supreme Court has confirmed that dance is a medium of expression protected by the federal constitution. (*Schad v. Borough of Mt. Ephraim, supra,* 452 U.S. 61, 65–66, 101 S.Ct. 2176, 2180–2181, 68 L.Ed.2d 671; *Doran v. Salem Inn, Inc., supra,* 422 U.S. 922, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648.)]

32 Cal.3d at 564, 186 Cal.Rptr. at 500–01, 652 P.2d 57–58.

Even the *Morris* dissent discussed *Schad* in the following light:

"Thus, *Schad,* considering as it did a sweeping restriction on *all* live entertainment, wholly fails to support the present majority's contention that prohibition of nude *nontheatrical* dancing impinges upon some protected activity. In view of the unduly broad scope of the zoning ordinance at issue in *Schad,* the high tribunal had no need to, and did not, reach that issue. *It bears repeating that we are not here presented with an*

*attempted censorship of any theatrical performance."* (Emphasis added.) *Id.* at 574, 186 Cal.Rptr. at 507, 652 P.2d at 64. The dissent in Morris also would be cognizant of the protected rights in the theatrical setting while decrying the commercial exploitation of women's bodies:

"Given the various legitimate and compelling objections to the commercial exposure of the intimate parts of women's bodies, it is clear that the state and its local subdivisions have substantial and demonstrable interests in regulating the commercial exploitation of female nudity *in a nontheatrical setting.*"

(Emphasis added.) *Id.* at 578, 186 Cal.Rptr. 494, 652 P.2d at 67.

 After considering all of the foregoing, we are constrained to conclude that nonobscene nude dancing performed in an enclosed theater[3] for the entertainment of the paying spectators, all as occurred here, is presumptively protected as expression under the First Amendment, and the State, by its evidence, established a prima facie case that Ms. Erhardt was acting lawfully. This case is not dissimilar to one where police officers might observe a nude figure in a room with others present, make an arrest, and then establish by their testimony that the defendant was posing nude before an art class. In such a situation, of course, the conduct would be presumptively lawful, and we would so hold.

Reversed.

**3.** We realize that the term "theatrical production" has been broadly defined as including street skits. In *Schacht v. United States,* (1970) 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44, the defendant was prosecuted for the unauthorized wearing of an American military uniform while participating in a skit performed in front of an Armed Forces induction center, demonstrating opposition to American involvement in the Vietnam War. He claimed he was authorized to wear the uniform by that part of the statute which permitted wearing of the uniform while one is portraying a member of the armed forces in a theatrical or motion picture production if the portrayal did not tend to discredit the armed force. The Court concluded that theatrical productions "need not always be performed in buildings or even on a defined area such as a conventional stage." *Id.* at 61, 90 S.Ct. at 1558.

YOUNG, J., concurs.

CONOVER, P.J., dissents with opinion.

CONOVER, Presiding Judge, dissenting.

I respectfully dissent for two reasons:
1) the evidence was sufficient to sustain the conviction, and
2) the constitutional question was not properly preserved.

### I.

Erhardt argues the trial judge was bewildered on the issue of nipple coverings and based his judgment solely upon the uncovering of the buttocks. She claims because she had minimal opaque covering on her buttocks, she satisfied the statute's minimum requirements. Thus, there was insufficient evidence upon which to convict her, she opines.

When we review for sufficiency of the evidence, we look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. We determine only whether there is substantial evidence of probative value from which the trier of fact could make its finding beyond a reasonable doubt. *Hubbard v. State,* (1982) Ind., 437 N.E.2d 52; *Lenn v. State,* (1982) Ind., 437 N.E.2d 56. If there is evidence of probative value to support the trial court's conclusion, the conviction will not be overturned. *Copeland v. State,* (1982) Ind.App., 430 N.E.2d 393.

We are not suggesting by this opinion that individuals under the guise of performing a street skit are authorized to expose themselves to unwilling viewers. The Supreme Court has stated "scenes of nudity in a movie, like pictures of nude persons in a book, must be considered as a part of the whole work ... in this respect such nudity is distinguishable from the kind of *public nudity traditionally subject to indecent exposure laws* ... ('no one would suggest that the First Amendment permits nudity in public places.')" *Erznoznik v. City of Jacksonville,* (1975) 422 U.S. 205, 211 n. 7, 95 S.Ct. 2268, 2273, n. 7, 45 L.Ed.2d 125, cited in *Baysinger, supra,* 397 N.E.2d at 586.

Here, of course, the performance was conducted in an enclosed theater and viewed by willing ticket purchasers.

IND.CODE 35-45-4-1 reads in part as follows:

> Sec. 1. (a) a person who knowingly or intentionally, in a public place: ... (3) appears in the state of nudity; ... commits public indecency, a Class A misdemeanor.
>
> (b) "Nudity" means the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, the showing of the female breasts with less than a fully opaque covering of any part of the nipple, ....

From the evidence at trial, the court could reasonably find neither Erhardt's nipples nor her buttocks were covered with opaque material as required by the statute. Because it did so find, this case falls squarely within the proscription of the nudity statute. The evidence was sufficient to support Erhardt's conviction.

## II.

In my opinion we cannot reach the First Amendment issue. A constitutional challenge to a statute must be raised by motion to dismiss filed prior to arraignment and plea or it is waived. IND.CODE 35-3.1-1-6(a)(3), IC 35-3.1-1-4(b), (now recodified at IC 35-34-1-6(a)(3), IC 35-34-1-4(b)). *Marchand v. State*, (1982) Ind.App., 435 N.E.2d 284, 287; *Salrin v. State*, (1981) Ind.App., 419 N.E.2d 1351, 1354.

My review of the record reveals the constitutional issue was first raised in Erhardt's motion to correct errors. That was too late. The issue is waived on appeal.

For these reasons I would affirm the trial court's judgment.