Douglas TURNER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 32A04–9404–CR–146.

Court of Appeals of Indiana,
Fourth District.

May 9, 1995.

Rehearing Denied Aug. 14, 1995.

Transfer Denied Oct. 25, 1995.

Gary L. Wood, Danville, for appellant.

Pamela Carter, Atty. Gen., Suzann Weber Lupton, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

CHEZEM, Judge.

### Case Summary

Appellant–Defendant, Douglas Turner ("Turner"), appeals his two convictions of Aiding, Inducing or Causing Public Indecency,[1] class A misdemeanors. We affirm.

### Issues

Turner presents four issues for our review. We consolidate and restate these issues as follows:

I. Was the verdict supported by sufficient evidence that Turner committed the offense of Aiding, Inducing or Causing Public Indecency?

II. Was evidence concerning a civil zoning proceeding against Turner admissible?

1. Ind.Code §§ 35–41–2–4 and 35–45–4–1.

III. Were certain statements made by the Prosecutor during voir dire proper?

#### Facts and Procedural History

The facts most favorable to the verdict are: At all times relevant to the charges herein, Turner was the owner of the Turn Around Lounge in Belleville, Indiana. On the evening of October 19, 1992, Officer Clark Fine and Officer John Hancock of the Hendricks County Sheriff's Department, witnessed Linda Boyd ("Daniels") and Marsha Willis ("Willis") dancing at the Turn Around Lounge. Each of the women was wearing a "G-string."[2] Both officers believed that Daniels and Willis had violated Indiana's Public Indecency Statute by unlawfully exposing their buttocks.[3] Turner was generally moving around within the lounge that evening while the dancing occurred. Later that night, the officers placed Daniels and Willis under arrest for Public Indecency, and placed Turner under arrest for Aiding, Inducing or Causing Public Indecency.

On October 27, 1992, Daniels was again dancing in a G-string at the Turn Around Lounge. On that evening, however, Turner was not in the open area of the lounge where the dancing had occurred. That night, Officer Danny Williams of the Hendricks County Sheriff's Department arrested Daniels and Turner for Public Indecency, and Aiding, Inducing and Causing Public Indecency, respectively.

In total, Turner was charged with two counts of Aiding, Inducing or Causing Public Indecency which were merged into one cause. In the jury trial which ensued, Turner represented himself although stand-by counsel was appointed. During the trial, testimony was admitted indicating that "pasties and a G-string" was the adult entertainment industry's understanding of the legal minimum standard for women's attire. Additionally, evidence was admitted regarding a civil agreed stipulation between Turner and Hendricks County suggesting the same minimum standard. The jury found Turner guilty on both counts and he was sentenced accordingly.

#### Discussion and Decision
##### I. Sufficiency of the Evidence

Turner contends that the verdict was not supported by sufficient evidence with regard to each material element of the crime charged. Turner argues that the State failed to prove that Daniels or Willis committed an act of public indecency as defined by Ind. Code § 35–45–4–1, and as interpreted by Chief Justice William Rehnquist in *Barnes v. Glen Theatre, Inc.* (1991), 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504. We do not agree with Turner's reading of the applicable law.

When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge witnesses' credibility. *Morrison v. State* (1993), Ind.App., 613 N.E.2d 865, *trans. denied.* We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict. *Id.*

Indiana Code § 35–45–4–1 provides:

(a) A person who knowingly or intentionally, in a public place: ...

(3) appears in a state of nudity; ... commits public indecency, a Class A misdemeanor.

(b) *"Nudity" means the showing of the human* male or female genitals, pubic area, or *buttocks with less than a fully opaque covering,* the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of covered male genitals in a discernibly turgid state. (emphasis added)

Indiana Code § 35–41–2–4 provides:

A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:

(1) has not been prosecuted for the offense;

---

**2.** Throughout the proceedings, a "G-string" was alternatively referred to as a "thong" and a "T-bar."

**3.** It should be noted that the attire worn by Daniels and Willis to cover their breasts is not at issue.

(2) has not been convicted of the offense; or

(3) has been acquitted of the offense.

■ Thus, to convict Turner of the charged offense it was necessary first to demonstrate that a violation of the Public Indecency statute occurred, and then to show that Turner aided, induced or caused the commission of the offense. Ind.Code § 35–41–2–4–.

In determining whether a violation of the Public Indecency statute occurred, we are guided by our supreme court's decision in *Erhardt v. State* (1984), Ind., 468 N.E.2d 224. *Erhardt* concerned a woman who entered a "Miss Erotica of Fort Wayne" contest in February of 1982. *Erhardt v. State* (1984), Ind.App., 463 N.E.2d 1121, 1122. During a portion of the dance segment of the contest, Erhardt danced wearing only a G-string and scotch tape criss-crossed over her nipples. Thereafter, Erhardt was arrested for, and convicted of, public indecency. *Id.*

On appeal, the Fourth District reversed Erhardt's conviction, concluding that there was insufficient evidence to support the conviction. Judge Conover dissented. In that dissent, he first noted Erhardt's argument: there was insufficient evidence to convict Erhardt because the minimal opaque covering (i.e., G-string) on her buttocks satisfied the statute's minimum requirements. *Id.* at 1126. Judge Conover then noted the standard of review for sufficiency and quoted the language of the indecency statute. He then concluded:

From the evidence at trial, the court could reasonably find neither Erhardt's nipples nor her buttocks were covered with opaque material as required by the statute. Because it did so find, this case falls squarely within the proscription of the nudity stat-

ute. The evidence was sufficient to support Erhardt's conviction.

*Id.* at 1127.

In setting aside the Court of Appeals' opinion in *Erhardt* and affirming the decision of the trial court, Chief Justice Givan stated, "Judge Conover wrote a dissenting opinion in the Court of Appeals which is correct in every respect." *Erhardt,* 468 N.E.2d at 225. Our supreme court further stated that Erhardt violated the Public Indecency statute when she danced in the nude with her nipples covered by transparent tape and with her buttocks exposed. As such, our supreme court held, her "conviction must stand." *Id.*

■ In the present case, Daniels and Willis each wore G-strings. These G-strings consisted of two one-inch straps; one crossed the women's backs horizontally and the second ran vertically between the women's buttocks.[4] That is, Daniels and Willis each wore the same type of clothing as the defendant wore in *Erhardt.* In *Erhardt,* our supreme court addressed the same issue which is presented today, and found that a G-string violates the minimum requirements of Indiana Code § 35–45–4–1. Thus, while we recognize that many of today's swimsuits do not meet the standard set out by the Public Indecency statute, we feel compelled to follow Indiana supreme court precedent.

Furthermore, sufficient evidence exists to indicate that Turner exercised the control necessary to be convicted of Aiding, Inducing or Causing the offense.[5]

In an attempt to circumvent the plain meaning of the Public Indecency statute as interpreted by our supreme court, Turner asserts that Daniels and Willis each wore a G-string at all times while dancing in his lounge, and pursuant to *Barnes v. Glen Theatre, Inc.,* said dress constitutes compliance with the minimum clothing standards.

---

4. The term "buttock" has not been defined statutorily by our legislature. Although according to our research the term apparently lacks a legal meaning, "buttock" has been defined as "Either of the two rounded prominences on the human torso that are posterior to the hips and formed by the gluteal muscles and underlying structures." The American Heritage Dictionary 262 (3d ed. 1992). Absent any argument to the contrary, we use this definition.

5. Evidence was admitted showing that Turner owned the Turn Around Lounge, was present at the lounge on a daily basis, and maintained final authority regarding dress at the lounge. There was also evidence that Turner was seen walking around the bar area where the women were dancing on at least one of the nights charged in the information.

Therefore, Turner reasons, he cannot be convicted for Aiding, Inducing or Causing Public Indecency. The problem with Turner's application of *Barnes* to the present case is that the *Barnes* case addressed a very different issue, that is, whether "the First Amendment's guarantee of freedom of expression prevents the State of Indiana from enforcing its public indecency law" to prevent totally nude dancing. *Barnes*, 501 U.S. at 563, 111 S.Ct. at 2458. While referring to the Indiana statute, the United States Supreme Court confined itself to an inquiry of whether the State could draft and enforce a statute which prevented totally nude dancing.

■■■ In his plurality opinion rejecting the respondents'[6] claim, Chief Justice Rehnquist stated that while nude dancing is expressive conduct, it falls within the outer perimeters of the First Amendment, and only marginally so. *Barnes*, 501 U.S. 560, 565–67, 111 S.Ct. 2456, 2460. Hence, the Supreme Court applied the *O'Brien*[7] four-part test as follows. Chief Justice Rehnquist stated that first, Indiana's public indecency statute is "clearly within the constitutional power of the State." *Id.* at 567, 111 S.Ct. at 2461. Second, the statute banning public nudity furthers a substantial and longstanding government interest in protecting order and morality. *Id.* at 567–70, 111 S.Ct. at 2461–62. Third, the governmental interest in preventing public nudity is unrelated to the suppression of free expression. Regarding the fourth part, which requires that the incidental restriction on First Amendment freedom be no greater than is essential to the furtherance of the governmental interest, the Court stated:

> It is without cavil that the public indecency statute is "narrowly tailored;" Indiana's requirement that the dancers wear at least pasties and a G-string is modest, and the bare minimum necessary to achieve the state's purpose.

*Id.* at 572, 111 S.Ct. at 2463.

Turner interprets the above statement regarding the fourth prong to mean that requiring a person to wear any more than pasties and a G-string violates *Barnes*. However, the United States Supreme Court did not address the issue of whether the State could require more than pasties and G-strings to comply with the indecency law. *Cafe 207, Inc. v. St. Johns County*, 856 F.Supp. 641, 646 (M.D.Fla.1994).[8] To the contrary, Chief Justice Rehnquist stated that the modest requirement of pasties and a G-string is the bare minimum necessary to achieve the state's purpose.

> This is nothing more, after all, than a practical recognition that there are no articles of clothing having less dimension than pasties and a G-string, and this implicit observation does not constitute a holding that pasties and a G-string are also the maximum requirements of dress that an anti-nudity ordinance may impose. The Court simply did not reach and did not decide that issue.

*Cafe 207*, 856 F.Supp. at 645–46.

■■■ This is not to say that the State could require more than its statute provides.

---

6. The respondents were two establishments in South Bend, Indiana, that wished to provide totally nude dancing, and various individual dancers who were employed at these establishments. *Barnes*, 501 U.S. 560, 561–63, 111 S.Ct. 2456, 2458.

7. The case of *United State v. O'Brien* (1968), 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672, *reh. denied*, involved a man who burned his draft card on the steps of the South Boston courthouse in the presence of a considerable crowd. O'Brien was convicted of violating a statute that prohibited the knowing destruction or mutilation of such a card. He asserted that his conviction violated the First Amendment because his act of burning the card was "symbolic speech"—expressive conduct. In rejecting his argument, the Court developed and applied a four-prong test.

8. The *Cafe 207* case concerned a constitutional challenge to a county ordinance which prohibited nudity in public places. The ordinance defined nudity of a female as "whenever more than two-thirds of the buttocks or more than three-fourths of the breasts are exposed." *Cafe 207*, 856 F.Supp. at 642. In rejecting the challenge, the court noted that "so long as an anti-nudity statute is subject to any First Amendment scrutiny, ... there must be a line in every case beyond which the law makers cannot go in requiring clothing or prohibiting exposure in some contexts.... Definition of that constitutional line, however, must await a case-by-case development of the law and further guidance from the Supreme Court. Suffice it to say that [the St. Johns anti-nudity ordinance] does not cross that constitutional boundary." *Id.* at 646.

However, in this case, the State is not asking for more coverage than its statute requires; rather, the State is merely asking for compliance with the portion of the Indiana statute which requires that buttocks not be shown with less than a fully opaque covering.

Moreover, Chief Justice Rehnquist stated that in *Erhardt* "the Indiana Supreme Court did not affirmatively limit the reach of the indecency statute, but merely said that to the extent the First Amendment would require it, the statute might be unconstitutional as applied to some activities." *Barnes*, 501 U.S. 560, 565, 111 S.Ct. 2456, 2459, n. 1. The present case does not involve an unconstitutional application of the statute. Requiring an incidental increase in fabric to cover the buttocks could hardly be deemed an enlargement of the restriction on public nudity significant enough to rise to constitutional dimensions—especially where, as here, nude dancing has already been described as expression falling on the outer perimeters of the First Amendment, and just marginally so. Again, *Cafe 207* is instructive:

> Once it is established that a burden may be imposed on the expressive content of erotic dancing by requiring some clothing—pasties and a G-string—then it does not seem to me from a constitutional standpoint that a modest increase in the amount of body covering required by the law really adds any significant, incremental burden on the expressive component of the dance.

*Cafe 207*, 856 F.Supp. at 646.[9]

■ In view of the undisputed facts in Turner's case, the Indiana Supreme Court's opinion in *Erhardt*, and the plain meaning of what has been deemed a constitutional statute, there was evidence sufficient to support a finding that Daniels and Willis were in violation of the Indiana Public Indecency law. Further, looking only to the evidence of probative value and the reasonable inferences to be drawn therefrom, Turner's conviction for Aiding, Inducing or Causing Public Indecency was supported by sufficient evidence.

## II. Civil Zoning Proceeding

During the trial, Turner made several references to an Agreed Stipulation reached between the County and himself in which the parties agreed that the dancers at Turner's lounge would wear at least pasties and G-strings. The purpose behind these references was presumably to attempt to demonstrate that Turner made every effort to comply with the agreement, and therefore, the law. On rebuttal, the State called the County's attorney, Greg Steuerwald ("Steuerwald"), who testified that the stipulation was initiated because of complaints regarding Turner's lounge. Through witness Steuerwald, the State also elicited testimony to the effect that Turner was cited for contempt of the Agreed Stipulation. Turner now argues that the evidence regarding the contempt of the stipulation should not have been admitted. We disagree.

■ As both parties agree, Turner originally did not object to the introduction of evidence regarding the stipulation and, in fact, argued for its admission, and thereafter, referred to it often. It was only when the State began to introduce evidence of Turner's violation of the stipulation that Turner objected to the evidence. However, having already agreed to the introduction of evidence regarding the stipulation, Turner waived his objection to the State's presentation of further evidence on the subject. *See Chandler v. State* (1991), Ind., 581 N.E.2d 1233; *Benefiel v. State* (1991), Ind., 578 N.E.2d 338.

■ Furthermore, once a defendant voluntarily opens the door to an issue by introducing evidence about it, the State may ask further questions to elicit a more accurate statement. *Letica v. State* (1991), Ind., 569 N.E.2d 952; *see also Jones v. State* (1992), Ind.App., 605 N.E.2d 193. Turner initially introduced evidence of the stipulation, and cannot later claim that evidence unflattering to him regarding that same stipulation should not be admitted.

**9.** Although *Cafe 207* involved a county ordinance rather than a state statute, that case analyzed the same issue presented in Turner's case.

### III. Prosecutor's Voir Dire Statements

During voir dire, Turner objected to the following comment by the Prosecutor.

One of the other things I wanted to ask you folks about before we get started here. As the judge will instruct you later, the case you're about to hear the State has alleged that Mr. Turner, aided, induced or caused the crime of public indecency to be committed. The State has not alleged, you know, it is not an issue whether that crime was committed or not. The fact of the matter is that the dancers who committed the crime were arrested and convicted. The question for you folks to decide today is not whether the crime happened, because it did. What you folks need to decide is whether Mr. Turner aided, induced or caused the crime to be committed.

(R. 351).

Turner argues that the Prosecutor's statements were improper in that they were designed to condition the jury to accept the State's position concerning Turner's guilt; that the Prosecutor's comments left the jury with the misimpression that the State need not independently prove that Daniels and Willis committed public indecency; and that, as a result, Turner's objection should have been sustained and an appropriate instruction read.

When reviewing a charge of prosecutorial misconduct, this court "first must determine whether the prosecutor in fact engaged in misconduct and then determine whether the misconduct placed the defendant in a position of grave peril to which he should not have been subjected." *Bardonner v. State* (1992), Ind.App., 587 N.E.2d 1353, 1357. In the present case, the Prosecutor's comments were a misstatement of the law. Consequently, Turner's objection should have been sustained. However, the error produced by the Prosecutor's comments was cured by the instructions, both preliminary and final. Hence, we do not agree that the erroneous comments placed Turner in grave peril.

Affirmed.

KIRSCH, J., concurring in result with separate opinion.

RILEY, J., dissenting with separate opinion.

KIRSCH, Judge, concurring in result.

Only out of obedience to the principles of stare decisis do I concur in the result reached by the majority. That result is mandated by the holding of our supreme court in *Erhardt v. State* (1984), Ind., 468 N.E.2d 224. I write separately only to note that the majority in *Erhardt* neither considered, nor resolved, the constitutional issues before them. Were we writing on a clean slate, I would vote to reverse the convictions for the reasons set out in Justice DeBruler's dissenting opinion in *Erhardt. Id.* at 226 (DeBruler, J., dissenting). *See also State v. Baysinger* (1979), 272 Ind. 236, 397 N.E.2d 580 (DeBruler, J. dissenting).

Until our supreme court addresses the freedom of expression and overbreadth issues presented by the application of the Indiana public indecency statute to cases such as the one now before us, however, I am compelled to vote to affirm.

RILEY, Judge, dissenting.

I respectfully dissent. In order to satisfy the due process requirements of the United States and Indiana Constitutions, a penal statute must be sufficiently explicit so as to inform individuals of the consequences of contemplated conduct. *Van Sant v. State* (1988), Ind.App., 523 N.E.2d 229, 233, citing *Whitewater Valley Canoe Rental, Inc. v. Bd. of Franklin Co. Commr's* (1987), Ind.App., 507 N.E.2d 1001, 1004. Thus, if the challenger establishes that the statute forbids conduct in terms so vague that persons of ordinary intelligence must necessarily guess at the statute's meaning and differ as to its application, then the statute violates due process of law, is void for vagueness, and unconstitutional. *Id.* at 1004. Charging Turner with Aiding, Inducing or Causing Public Indecency, after he has entered into an agreed Stipulation with the County that allowed his dancers to wear "at least pasties and G-strings" and after Justice Rehnquist in the *Barnes v. Glen Theatre, Inc.* case, in refer-

ring to Indiana's public indecency statute, declared that if "dancers wear at least pasties and a G-string" then "the bare minimum necessary to achieve the state's purpose" has been met, would confuse many lawyers let alone people of ordinary intelligence.

*Barnes* has made it abundantly clear that nude dancing may be entitled to the "barest" minimum protection of the First and Fourteenth Amendments. It would be the belief of most people that the dancers were exercising their rights under the First Amendment within the confines of the statute by wearing pasties and a G-string.

A man who appears in public "showing covered male genitals in a discernibly turgid state," which is also included in the definition of "nudity," could also be arrested under this statute. It would generally be the belief of the public, however, that if male genitals were covered there would be no state's interest to protect. In the same light, the dancers were led to believe by a stipulated agreement and advice of counsel that pasties and a G-string were appropriate coverings. To allow a person charged with a criminal offense to have to resort to guessing about whether the G-string was wide enough or opaque enough does not properly inform the public of the criminal offense.

I agree that there are compelling state interests that are important in the regulation of public nudity but our statute defining "nudity" is not narrowly drawn to allow people to know what they are charged with. This statute only leads people to guess at its meaning and as a result the statute differs in its application.

The Indiana Supreme Court has given the Public Indecency Statute a limiting construction and has not decided whether the statute itself is vague. However, the statute as applied to the precise circumstances of this case is vague because Turner was insufficiently informed of the consequences of his conduct.