**Barbara LASKO, Appellant (Defendant Below),**

**v.**

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 2-979A278.**

Court of Appeals of Indiana, Second District.

Sept. 9, 1980.

---

Thomas M. Barr, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant Barbara Lasko (Lasko) appeals her conviction of public indecency,[1] alleging the evidence was not sufficient to support her conviction because the conduct for which she was charged did not occur in a "public place" within the meaning of the statute.

We reverse.

## FACTS

The facts most favorable to the State are:

On March 7, 1978, a vice squad officer (the Officer) entered a massage parlor located in Indianapolis. In the massage parlor's reception area, he requested that Lasko give him a massage. She then escorted him to a separate room, where she instructed him to remove his clothing. Lasko left the room while the Officer removed his clothing. When she returned, she closed and locked the door.[2]

The Officer then asked Lasko to take off her clothing. She told him that would cost him an additional $10.00, which he paid her. She disrobed and, while nude, massaged him, and fondled his genitals. Subsequent to the fondling, he arrested her for public indecency and prostitution. Lasko was found not guilty of the latter charge.

After a trial without a jury, Lasko was convicted of public indecency. The court

specifically found that a "massage parlor" is a "public place" within the meaning of Ind.Code § 35–45–4–1.

## ISSUE

On appeal, Lasko presents one issue:

Was the room in which she massaged the Officer a "public place" within the meaning of the statute on public indecency?

## DECISION

*PARTIES' CONTENTIONS*

Lasko contends that the room in which the act occurred was a private area, not open to the public in the same sense as other areas of the massage parlor might be, and thus, the evidence did not support her conviction.

The State counters that a "public place" is any place to which the public have access as of right or by the invitation or permission of the owner,[3] and that the massage parlor here was such a place.

*CONCLUSION*

██ A private locked room in which two adult consenting persons engage in promiscuous conduct is not a "public place" within the meaning of the Public Indecency statute, Ind.Code § 35–45–4–1.

The statute under which Lasko was convicted was recently upheld as constitutional by the Indiana Supreme Court in *State v.*

---

1. Ind.Code § 35–45–4–1 reads:

    (a) A person who knowingly or intentionally, *in a public place*:
    (1) Engages in sexual intercourse;
    (2) Engages in deviate sexual conduct;
    (3) Appears in a state of nudity; or
    (4) Fondles the genitals of himself or another person; commits public indecency, a class A misdemeanor.
    (b) "Nudity" means the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of covered male genitals in a discernibly turgid state. [Emphasis added.]

2. Lasko testified the door was locked, and this testimony was not contradicted. She also testified the door was marked "Private"; the Officer testified he did not recall whether it was so marked.

3. One of two major cases relied upon by the State is a Canadian case, and we deem its precedential value doubtful. The other case upon which the State relies heavily, *People ex rel. Lee v. Bixby* (1875), 67 Barb. (N.Y.) 221, involved an exhibition to an assemblage of five men in one room. The fact that only two persons were present in the room in the instant case renders it distinguishable.

*Baysinger* (1979), Ind., 397 N.E.2d 580. Although the issue here presented is not identical, the language of that case is controlling. We also conclude that our reversal here is mandated not only by the holding in *Baysinger,* but also by well established rules of statutory construction.

The Public Indecency statute, as amended, provides:

(a) A person who knowingly or intentionally, *in a public place* :

(1) Engages in sexual intercourse;

(2) Engages in deviate sexual conduct;

(3) Appears in a state of nudity; or

(4) Fondles the genitals of himself or another person;

commits public indecency, a class A misdemeanor.

(b) "Nudity" means the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of covered male genitals in a discernibly turgid state.

Ind.Code § 35–45–4–1. [Emphasis added.]

▮ Criminal statutes are to be strictly construed. *Murray v. State* (1957), 236 Ind. 688, 143 N.E.2d 290; *Simmons v. State* (1955), 234 Ind. 489, 129 N.E.2d 121; *McCormick v. State* (1978), Ind.App., 382 N.E.2d 172; *Renfroe v. State* (1974), 161 Ind.App. 519, 316 N.E.2d 405. They are to be construed against the State. *State v. Gilbert* (1966), 247 Ind. 544, 219 N.E.2d 892. *See generally,* 26 I.L.E., *Statutes* § 175. The object of this rule of interpretation is to establish a rule of certainty for the protection of the individual. *Caudill v. State* (1946), 224 Ind. 531, 69 N.E.2d 549. Such a rule is also in keeping with the presumption of innocence. In order for an act to be within a penal statute, it must be clearly within both the spirit and the letter of the statute. *Pontarelli v. State* (1931), 203 Ind. 146, 176 N.E. 696; *State v. Lowry* (1906), 166 Ind. 372, 77 N.E. 728.

▮ The rule does not require that statutory construction be strained to the point of defeating the intent of the legislature. *State v. Mears* (1938), 213 Ind. 257, 12 N.E.2d 343; *Boyer v. State* (1908), 169 Ind. 691, 83 N.E. 350. On the contrary, the statute must be given a reasonable construction so as to give effect, if possible, to the expressed legislative intent. *Simmons, supra; Short v. State* (1964), 234 Ind. 17, 122 N.E.2d 82; *Morris v. State* (1949), 227 Ind. 630, 88 N.E.2d 328.

Our task, then, is to discern the legislature's intent in enacting such a statute. Obviously, the term "public place" could be given a broad reading by the courts; our Supreme Court in *Baysinger,* however, concluded that our prior case law has adequately defined the term.

*Baysinger* dealt with nude dancing and appearances in taverns and bars. Concluding that this constituted *public* indecency, the court stated:

Webster defines "public" as "open to common and general use, participation, or enjoyment" of the public. It has been held that the term "public place" as used in statutes pertaining to gambling includes any place which for the time being is made public by the assemblage of people who go there with or without invitation and without restraint. *Roberts v. State,* 1908, 4 Ga.App. 207, 60 S.E. 1082, 1085.

A place may be accessible to the public for gambling notwithstanding that every person who desires is not permitted access thereto. *Lockhart v. State,* 1853, 10 Tex. 275, 276.

It has also been held that in a case involving a prohibition law that by "public" is meant that the public is invited to come to the place and has access to it for the purpose within the scope of the business there maintained. *Brooks v. State,* 1916, 19 Ga.App. 3, 90 S.E. 989, 991.

"Accessible to the public" as used in the Act here is question has not been defined by either of the courts of appeal

of this State, nor have we been able to find definition by the courts in other jurisdictions.

From a consideration of the terms "accessible", "public", and "public place", as defined hereinabove, together with the purpose of the Act, we have concluded that the phrase "in any place accessible to the public" . . ., means any place where the public is invited and are free to go upon special or implied invitation–a place available to all or a certain segment of the public.

*Baysinger, supra* at 583, *quoting Peachey v. Boswell* (1960), 240 Ind. 604, 167 N.E.2d 48, 56–57.

What occurred in this case was not done before an "assemblage" of people. *Compare Ardery v. State* (1877), 56 Ind. 328. Persons did not enter–indeed, could not enter–the locked room while Lasko and the Officer were engaged in their licentious liaison. Certainly neither the public nor any segment thereof was invited, expressly or impliedly, to witness the illicit act.[4] The room was not accessible while the prohibited conduct was in progress. The public was not free to enter "without restraint."

The legislative intent in prohibiting such conduct from occurring in a "public place" appears to be to compel persons who wish to engage in such conduct to do so *privately*. Nudity and sexual activity have flourished in society since Adam and Eve, yet traditionally they have been subject to laws, such as our Public Indecency statute, which embodies the platitude that there is a time and a place for everything. The law thus declares that a "public place" is no place for sexual activity. Our case law supports the theory that public indecency, when only two consenting persons are involved in the act, is made punishable in order to protect the non–consenting viewer who might find such a spectacle repugnant. For example, our courts have held that a public highway is indeed a public place for purposes of this statute. *E. g., State v. Waggoner* (1876), 52 Ind. 481; *State v. Moriarty* (1881), 74 Ind. 103; *Woodworth v. State* (1916), 185 Ind. 582, 114 N.E. 86; *Rosenstein v. State* (1893), 9 Ind.App. 290, 36 N.E. 652. *See also Preston v. State* (1972), 259 Ind. 353, 287 N.E.2d 347 (shopping center parking lot).

So what two consenting adults do in private is not "public" indecency. It may be indecent; it may also be an act of private lewdness. It may well be punishable as prostitution,[5] fornication sodomy, or adultery. It may be subject to municipal ordinances regarding the licensing of massage parlors. *See City of Indianapolis v. Wright* (1978), Ind., 371 N.E.2d 1298. But the legislative intent expressed in the Public Indecency statute is not elastic enough to punish private indecency.

In *Wainscott v. State* (1929), 89 Ind.App. 452, 166 N.E. 666, this Court considered whether a conviction for public indecency could stand based on the defendant's having exposed his private parts, for the purpose of having sexual intercourse, in a private dwelling. The defendant was not a resident of the dwelling. Apart from the two

---

4. In *Lorimer v. State* (1881), 76 Ind. 495, our Supreme Court held that if the place is private, any number of persons, upon private invitation by the owner, may assemble there without converting the place, legally speaking, into a "public place" for purposes of public indecency. This opinion clearly shows that the focus of the offense is on the nature of the place, rather than the activity.

5. Our prostitution statute was amended in 1979 to read as follows:

Sec. 2. A person who knowingly or intentionally:

(1) Performs, or offers or agrees to perform, sexual intercourse or deviate sexual conduct; or

(2) *Fondles, or offers or agrees to fondle, the genitals of another person* ;

for money or other property commits prostitution, a class A misdemeanor.

Ind.Code § 35–45–4–2 (as amended). [Emphasis added.] The clause emphasized above was an addition to the older statute; this implies that our legislature did not believe such conduct was prohibited by another statute.

sexual partners, no other persons were present in the room. *Id.* The room was not open to view by persons in any public place. *Id.* Conclusion—conviction reversed.

Read together, *Wainscott* and *Baysinger* demonstrate the error of holding, as the prosecution here argued before the trial court, that *any* private room in a business establishment is so much a part of such establishment as to make it a "public place" for purposes of the Indecency Statute. In *Baysinger,* the appellants argued that "public place" was so vague as to include "rest rooms, shower rooms, saunas, and locker rooms." 397 N.E.d at 583. Our Supreme Court rejected this contention, focusing on the histrionic aspects of nude dancing and the sale of alcoholic beverages on the premises. Dissenting, Justice DeBruler warned that the statute must not be read so broadly as to permit the arrest of nude models for art classes; Justice Hunter similarly warned that the connection with alcoholic beverages could not be deemed controlling.

Having reviewed the prior Indiana case law, as *Baysinger* requires, we are compelled to conclude that no public indecency case in this State has ever gone so far as the Attorney General here requests. We have also examined the case law of our sister states. *See generally* 50 Am.Jur.2d, *Lewdness, Indecency, and Obscenity* §§ 1, 2, 16, 17; *Annot.,* 96 A.L.R.3d 692. When only two participants are involved, the cases seem to focus on whether the conduct is likely to be witnessed by other persons. *See, e. g., Messina v. State* (1957), 212 Md. 602, 130 A.2d 578; *State v. J.O. & F.C.* (1976), 69 N.J. 574, 355 A.2d 195; *Green v. State* (Tex.Cr.App.1978), 566 S.W.2d 578. *See also White v. State* (1976), 138 Ga.App. 470, 226 S.E.2d 296. *But see In re Steinke* (1969), 2 Cal.App.3d 569, 82 Cal.Rptr. 789 (disorderly conduct), *overruled in Pryor v. Municipal Court* (1979), 25 Cal.3d 257, 158 Cal.Rptr. 330, 341, n. 12, 599 P.2d 636, 647. One of these cases is strikingly similar. In a prosecution concerning the indecent fondling of an undercover officer's genitals in a massage parlor, the Georgia Appellate Court affirmed the defendant's conviction. *See Rushing v. State* (1974), 133 Ga.App. 434, 211 S.E.2d 389. The opinion makes clear that the deciding fact was that the evidence indicated *the door to the cubicle was open at all times. See id.* at 390. Here, however, the door was closed and locked.

Our holding should not be construed as inconsistent with or an incursion upon *Baysinger.* The facts are manifestly different. In *Baysinger* the public had access, by business invitation, to view persons engaged in the prohibited conduct. The conduct occurred in that public place, where persons entered without restraint. Whether in fact the public *does* enter can be simply one factor in the determination of the "public" nature of the place. As the public highway cases and *Wainscott* demonstrate, the factor of reasonably foreseeable, *potential* witnessing is also significant. In this case, neither actual nor potential view by others was possible.

The conviction is reversed.

SHIELDS and SULLIVAN, JJ., concur.