Debbie ADIMS, Patricia Runkel, and Uscilla Smith, Defendants-Appellants,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 3–983A319.

Court of Appeals of Indiana,
Third District.

April 10, 1984.

Rehearing Denied June 18, 1984.

Charles A. Asher, South Bend, for defendants-appellants.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

HOFFMAN, Judge.

Debbie Adims, Patricia Runkel, and Uscilla Smith were all found guilty of public nudity in violation of IND.CODE § 35–45–4–1. The incidents precipitating the charges took place while the three were employed as dancers at an adult bookstore in South Bend, Indiana.

At the entrance to the bookstore a large sign advertised the adult entertainment within. Access to the store was restricted to persons over the age of 18. Inside the store were racks of magazines and to one side were eight booths. Each booth was approximately four feet by four feet in size and contained one chair. All eight booths had doors which could be locked and "in use" lights above the doors. Two kinds of "showings" were possible within the bookstore.

Six of the booths faced onto a small stage. A glass window in the booth permitted the occupant to see onto the stage. Until a customer deposited the required $.25 into a timing machine, lights in the booth shone on the glass, preventing a view of the stage. Once the money was deposited, the lights went out, allowing the viewer to see one or more female dancers in states of complete or partial nudity.

The second type of show was a so-called "private showing," where a customer would sit in a similarly small booth and, after depositing a certain number of quarters in a timing machine, see a nude or partially nude female performer in a private showing with a telephone hookup between the performer and the customer. The booths also contained boxes for tips.

On March 29, 1983, a police officer in plain clothes went into the bookstore, obtained quarters from the clerk, and entered one of the six booths described earlier. After depositing eight quarters, he observed two dancers, Debbie Adims and Patricia Runkel. Adims was completely nude and danced at a distance. Runkel, wearing a short, see-through negligee with the breast area cut out, danced close to the booth window and announced that private shows were held in booths seven and eight.

The police officer then went to booth number seven. Via a telephone conversation, he chose to view Runkel. He was instructed by her to place quarters in the timing machine to enable him to see her, which he did. After a brief viewing and discussion with Runkel, the police officer left the establishment.

Approximately two hours later, the police officer returned and entered a booth adjacent to the dance floor. This time he observed three female dancers. The two he had seen earlier had been joined by a third, Uscilla Smith, who was completely nude. Smith advertised the private shows on this occasion while squatting in front of window to the officer's booth.

In challenging their convictions, the three appellants present the following issues:

(1) whether IND.CODE § 35–45–4–1 is unconstitutional; and

(2) whether the evidence was sufficient to support a finding that the charged acts occurred in a public place.

■ IND.CODE § 35–45–4–1 provides:

"Public indecency

Sec. 1. (a) A person who knowingly or intentionally, in a public place:

(1) engages in sexual intercourse;

(2) engages in deviate sexual conduct;

(3) appears in a state of nudity; or

(4) fondles the genitals of himself or another person;

commits public indecency, a Class A misdemeanor.

(b) 'Nudity' means the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the

showing of covered male genitals in a discernibly turgid state."

The appellants argue that this statute violates their constitutional rights to free expression, due process of law, and equal protection. They are aware that IND. CODE § 35–45–4–1 was previously declared to be constitutional by the Supreme Court of Indiana in *State v. Baysinger*, (1979) 272 Ind. 236, 397 N.E.2d 580. Yet appellants would have this Court hold otherwise.

The only real difference between the activity in *Baysinger* and that in the case now before us is that in *Baysinger* the activity occurred in bars while the activity we are to consider took place in an adult bookstore. Yet the decision in *Baysinger* did not rest on the State's interest in controlling alcoholic beverages.

Justice Pivarnik stated in *Baysinger, supra,* 272 Ind. at 247, 397 N.E.2d at 587:

"There is no right to appear nude in public. Rather, it may be constitutionally required to tolerate or to allow some nudity as a part of some larger form of expression meriting protection, when the communication of ideas is involved."

As in *Baysinger*, the appellants here made no hint of any expressive content in their behavior which elevated it to a level meriting constitutional protection. Therefore, we must decline appellants' invitation to overrule the Supreme Court of Indiana in this matter.

■ Appellants further argue that the evidence was insufficient to show that the acts with which they were charged took place in a public place within the meaning of IND.CODE § 35–45–4–1. To support their argument, appellants cite this Court's opinion in *Lasko v. State*, (1980) Ind.App., 409 N.E.2d 1124. *Lasko* was a case involving a massage parlor. The Court in *Lasko* held that,

"[a] private locked room in which two adult consenting persons engage in promiscuous conduct is not a 'public place' within the meaning of the Public Indecency statute, Ind.Code § 35–45–4–1." 409 N.E.2d at 1126.

However, the facts of the present case present somewhat of a hybrid situation. While the police officer and other patrons may have been in single little booths surrounding the common dance floor, the dancers were not performing for individual viewers. Concentration must be placed upon the circumstances surrounding the activity of the persons charged and in this case, the persons charged were performing for as many as six viewers at one time.

The *Baysinger* Court relied on the following definitions in its determination of what constituted a public place:

" 'Webster defines "public" as "open to common and general use, participation, or enjoyment" of the public. It has been held that the term "public place" as used in statutes pertaining to gambling includes any place which for the time being is made public by the assemblage of people who go there with or without invitation and without restraint. *Roberts v. State*, 1908, 4 Ga.App. 207, 60 S.E. 1082, 1085.

" 'A place may be accessible to the public for gambling notwithstanding that every person who desires is not permitted access thereto. *Lockhart v. State*, 1853, 10 Tex. 275, 276.

" 'It has also been held that in a case involving a prohibition law that by "public" is meant that the public is invited to come to the place and has access to it for the purpose within the scope of the business there maintained. *Brooks v. State*, 1916, 19 Ga.App. 3, 90 S.E. 989, 991.

\* \* \* \* \* \*

" 'From a consideration of the terms "accessible", "public", and "public place", as defined hereinabove, together with the purpose of the Act, we have concluded that the phrase "in any place accessible to the public" as used in § 10–2330, *supra*, means any place where the public is invited and are free to go upon special or implied invitation—a place available to all or a certain segment of the public.' " 272 Ind. at 240–241, 397 N.E.2d at 583.

The common dance floor and surrounding booths which existed in the bookstore fall within the definition of public place adopted by the Supreme Court of Indiana in *Baysinger, supra.* The defendants do not contest the fact that they were performing in the nude. Since they were in a public place, all three were therefore properly found guilty of public nudity.

Arguably, the situation in which the private shows were conducted may more closely parallel the massage parlor situation which the *Lasko* Court held was not public. However, we need not decide that question. The charging instrument for all three defendants, including Runkel, stated that they "did knowingly appear in a state of nudity, to-wit: exposing [their] breasts and genitalia in a public place, to-wit: at and near 500 W. Chippewa Street," and makes no distinction between the types of shows. All three defendants appeared on the dance floor surrounded by the booths; therefore, all three were properly convicted of public nudity.

Having demonstrated no reversible error, the convictions are affirmed.

Affirmed.

STATON, P.J., concurs.

GARRARD, J., concurs with opinion.

GARRARD, Judge, concurring.

We have before us a prosecution for "public indecency" based upon nude dancing performed by the appellants on a stage separated by a glass partition from the booths containing their audience. I agree with the majority that the activity occurred in a public place.

The more viable issue is whether the statute criminalizing the conduct was overbroad and an impermissible invasion of First Amendment guarantees. Relying upon our Supreme Court's decision in *State v. Baysinger* (1979), 272 Ind. 236, 397 N.E.2d 580 the majority holds that conduct rather than expression is involved and that

no constitutional question is present. In so doing, it does not discuss the decision in *Schad v. Borough of Mount Ephraim* (1981), 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 cited by appellants as necessarily establishing that nude dancing is protected free expression.

In *Schad* the activity in question was live nude dancing viewed from a booth through a glass panel as in the case before us. There, as here, the activity was presented in an adult bookstore, and patrons utilized a coin-operated mechanism to enable them to view the dancer.

The question presented in *Schad* was whether this activity could properly be proscribed by a municipal zoning ordinance that purported to prohibit any commercial form of live entertainment in an established commercial zone. 452 U.S. at 64, 101 S.Ct. at 2180. The Court reversed the convictions with four justices concurring specially and two justices dissenting. Writing for the Court Justice White noted that entertainment, as well as political and ideological speech, is protected and stated:

> "Nor may an entertainment program be prohibited solely because it displays the nude human figure. '[N]udity alone' does not place otherwise protected material outside the mantle of the First Amendment."

452 U.S. at 66, 101 S.Ct. at 2181.

His opinion then proceeds to an examination of the ordinance, its impact and the justifications for First Amendment intrusions upon the assumption that freedom of expression is involved. Only Justice Stevens' concurrence expressly acknowledges that some instances of nude dancing may be protected, while others may not.[1] 452 U.S. at 80, 101 S.Ct. at 2188.

It does not appear from the text that the Borough presented the question as an issue so it was necessarily decided by the majority. Instead it appears most likely that it did not. Furthermore, the three decisions

---

**1.** The Chief Justice joined by Justice Rehnquist, dissenting, merely note that they assume arguendo "the 'expression' manifested in nude dancing that is involved here is somehow protected speech ...." 452 U.S. at 86, 101 S.Ct. at 2192.

cited by Justice White[2] simply stand for the proposition that all nudity is not obscene. Thus, *Schad* appears to simply beg the question as to whether live nude dancing necessarily involves free speech-expression.

The court in *Baysinger* distinguished between live dancing, which it felt might be no more than conduct, and nudity portrayed in books, films or plays, which it felt had to be interpreted in the context of the total presentation. 397 N.E.2d at 586.

I find nothing in *Schad* which necessarily overrules that view. We are therefore constrained by *Baysinger* to affirm.

I concur.

---

**2.** *Jenkins v. Georgia* (1974), 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (concerning the movie "Carnal Knowledge"); *Southeastern Promotions, Ltd. v. Conrad* (1975), 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (the rock musical "Hair"); and *Erznozik v. City of Jacksonville* (1975), 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (the movie "Class of '74").