**Larry THOMPSON, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

**No. 2–1084A327.**

Court of Appeals of Indiana,
Second District.

Oct. 1, 1985.

Linda M. Wagoner, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Larry Thompson appeals his conviction for Public Indecency under Ind.Code Ann. § 35–45–4–1 (Burns Supp.1984), a class A misdemeanor. Thompson challenges the court's finding the prohibited conduct occurred in a "public place" within the meaning of the statute.[1]

We affirm.

On April 10, 1984, Officer Michael Horn entered the Southside Adult Museum at 3510 Madison Avenue, Marion County, Indiana. The officer testified adult magazines and other paraphernalia for purchase were located in the front section of the store. Several movie-viewing booths lined the north and south sides of the building. Each booth, approximately two and one-half feet by four and one-half feet in size, contained a coin machine and a small wooden bench. Each booth had a wooden door which was hinged approximately two feet above the floor and which could be locked from the inside with a hook-and-eye lock. A "private" sign hung on each of the doors. The booth was dimly lit by the projector light when a movie was being viewed within the booth. There were no windows in the booths. A black, opaque curtain, which hung from the ceiling to the floor of the premises, obstructed a view of the booths from the patrons in the front area of the store.

In addition to the foregoing evidence, the parties stipulated the facts set forth in the affidavit for probable cause, which described the act committed by Thompson, and observed by Officer Horn, within the confines of the booth Officer Horn occupied. The affidavit, in relevant part, states: "LARRY A. THOMPSON ... EXPOSED GENITALS TO THIS OFFICER [HORN] BY PLACING HIS PENIS

---

1. On appeal, Thompson also alleges bias and prejudice on the part of the trial judge. However, Thompson's failure to include this contention in his motion to correct error results in a waiver of his right to have this issue considered on appeal. Ind.Rules of Procedure, Trial Rule 59(D)(2); *Thomas v. State,* 459 N.E.2d 373 (Ind. 1984).

THROUGH A GLORY HOLE [2] INTO MY BOOTH." Record at viii. The parties agreed the sole issue for the fact finder's determination at trial was whether the described conduct occurred in a "public place."

The relevant section of the public indecency statute under which Thompson was charged [3] and convicted provides:

"(a) A person who knowingly or intentionally, in a *public place:* ...

(3) appears in a state of nudity; commits public indecency, a class A misdemeanor.

(b) 'Nudity' means *the showing of the human male or female genitals,* pubic area, or buttocks *with less than a fully opaque covering*[.]"

Ind.Code § 35-45-4-1 (emphasis added). Thus, an essential element of the offense which the State must prove beyond a reasonable doubt is that the indecent exposure occurred in a public place.

In this case, Thompson challenges the sufficiency of the evidence supporting the trial court's finding that the charged act occurred in a public place. In support of his argument Thompson cites *Lasko v. State,* 409 N.E.2d 1124 (Ind.App.1980). There, defendant Lasko escorted a vice squad officer from the massage parlor reception area into a separate and locked room where, after both parties disrobed, Lasko massaged the officer and fondled his genitals. This court reversed Lasko's conviction for public indecency concluding the described conduct did not occur in a "public place" within the meaning of the public indecency statute. In reaching its conclusion, the court reviewed the definitions of

"public place" employed by our supreme court in *State v. Baysinger,* 272 Ind. 236, 397 N.E.2d 580 (1979).[4] Quoting from *Baysinger,* the *Lasko* court stated,

" 'Webster defines "public" as "open to common and general use, participation, or enjoyment" of the public. It has been held that the term "public place" as used in statutes pertaining to gambling includes any place which for the time being is made public by the assemblage of people who go there with or without invitation and without restraint. *Roberts v. State,* 1908, 4 Ga. App. 207, 60 S.E. 1082, 1085.

. . . .

" 'From a consideration of the terms "accessible", "public", and "public place", as defined hereinabove, together with the purpose of the Act, we have concluded that the phrase "in any place accessible to the public" as used in § 10-2330, *supra,* means any place where the public is invited and are [sic] free to go upon special or implied invitation—a place available to all or a certain segment of the public.' 272 Ind. at 240–241, 397 N.E.2d at 583."

409 N.E.2d at 1127–28.

The *Lasko* court considered the facts in light of these definitions and determined the separate room where the acts were committed did not constitute a "public place". The court explained:

"What occurred in this case was not done before an assemblage of people. *Compare Ardery v. State* (1877), 56 Ind. 328. Persons did not enter—indeed, could not enter—the locked room while Lasko and the Officer were engaged in their licentious liasion. Certainly neither

---

2. A "glory hole" has been defined as a hole "made in the walls of film-viewing booths to allow persons in contiguous booths to engage in usually anonymous sexual acts." *Reliable Enterprises, Inc. v. Superior Court,* 158 Cal.App.3d 604, 204 Cal.Rptr. 786, 791 (1984).

3. The charge filed against Thompson alleged "Larry Thompson did unlawfully and knowingly, in a public place, to-wit: 3510 S. Madison

(Southside Adult Museum) appear in [a] state of nudity." Record at vi.

4. *Baysinger* involved nude dancing in taverns and bars. The public had access, by business invitation, to view the nude dancing. The court concluded the conduct occurred in a public place.

the public nor any segment thereof was invited, expressly or impliedly, to witness the illicit act. The room was not accessible while the prohibited conduct was in progress. The public was not free to enter 'without restraint.'

"The legislative intent in prohibiting such conduct from occurring in a 'public place' appears to be to compel persons who wish to engage in such conduct to do so privately.... Our case law supports the theory that public indecency, when only two consenting persons are involved in the act, is made punishable in order to protect the non-consenting viewer who might find such a spectacle repugnant....

"So what two consenting adults do in private is not 'public' indecency. It may be indecent; it may also be an act of private lewdness....

....

"... When only two participants are involved, the cases seem to focus on whether the conduct is likely to be witnessed by other persons."

409 N.E.2d at 1128–29 (footnote omitted).

The focal inquiry for the *Lasko* court in making its public/private determination was the existence of an actual or potential view of the illicit act by the public.

A public/private determination was also an issue in *Adims v. State*, 461 N.E.2d 740 (Ind.App.1984). In *Adims* private viewing booths with lockable doors with "in use" lights above the doors encircled a small stage upon which three nude or partially nude dancers performed. A glass window in the booth permitted the arresting officer to see onto the stage once he deposited his money in a coin machine located within the booth. This court affirmed the public indecency conviction of dancer Debbie Adims. In so doing, this court again emphasized the viewability of the dancer's nudity by members of the public.

Employing the definition of "public place" adopted by our supreme court in

*Baysinger*, we examine the facts of the instant case. Initially, it is beyond dispute that the Southside Adult Museum qualifies as a place, "where the public is invited and are [sic] free to go upon special or implied invitation—a place available to all or a certain segment of the public." *Baysinger*, 272 Ind. at 241, 397 N.E.2d at 583, *quoting Peachey v. Boswell*, 240 Ind. 604, 167 N.E.2d 48, 57 (1960).

The characterization of the business establishment as a "public place," however, does not carry over into areas within the establishment which are properly denominated as "private places". We rejected this notion in *Lasko* where we noted "the error of holding ... that *any* private room in a business establishment is so much a part of such establishment as to make it a 'public place' for purposes of the Indecency statute." *Lasko*, 409 N.E.2d at 1129.

Nevertheless, in the instant case, the booths located within the Southside Adult Museum fall within the definition of "public place" employed in *Baysinger* and by this court in *Lasko*. Members of the public enjoyed unrestricted access to the individual film-viewing booths in the Southside Adult Museum. The public was invited to enter the booths for the purpose of viewing sexually explicit films. In particular, the booth adjoining Thompson's was open to common and general use.

Thompson, however, argues that inasmuch as members of the public could not witness "the conduct between two adults [Thompson and Officer Horn] who had voluntarily chosen to occupy the booths[,]" appellant's brief at 6, the conduct in question did not occur in a public place. In effect, Thompson suggests his case is factually analogous to the situation involved in *Lasko* and concludes the court's decision in that case is controlling. The fallacy in Thompson's reasoning is that it ignores the fact members of the public were implicitly invited to enter, without restraint, the individual film-viewing booths, and indeed, a member of the public, Officer Horn, did

enter one such booth and was exposed to Thompson's act of indecency.

■ Arguably, once a patron enters a film-viewing booth, shuts and secures the door behind him he converts what was once a place accessible to the public to a place where the public is no longer free to enter without restraint. Accordingly, indecent activity occurring within the confines of that booth may well fall outside the proscription of the public indecency statute. Such arrangement parallels the locked room situation in *Lasko*. However, in the instant case, Thompson exceeded the physical bounds of his private place (i.e., his booth from which he could exclude the public) by placing his uncovered genitals through a hole into an area susceptible to view by members of the public who were free to enter the adjoining booth without restriction. By placing his uncovered genitals outside his booth, Thompson no longer forestalled an actual or potential view of his prohibited conduct by others who would choose to enter the adjoining booth. In so doing, Thompson forfeited the protection afforded to persons who choose to engage in indecent conduct within private places. In this case, as in *Lasko* and *Adims*, the emphasis is upon where the conduct occurs. It is inconsequential that as to the actor the place where the actor is, as opposed to where his conduct occurs, may be private in that other members of the public may be or are excluded at the time of the conduct.

■ The *Lasko* court recognized the state's purpose in criminalizing public indecency is to protect the viewing public "who

might find such a spectacle repugnant[,]"[5] 409 N.E.2d 1128, and "to compel persons who wish to engage in such conduct to do so *privately*." *Id.* In furtherance of these aims, we hold Thompson's commission of the act charged in a place where members of the public viewed the prohibited conduct constituted the offense of public indecency.

Judgment affirmed.

BUCHANAN, C.J., concurs.

SULLIVAN, J., dissents, with separate opinion.

SULLIVAN, Judge, dissenting.

Offensive as the conduct may have been, it did not occur in a public place. It was intrusive. It was offensive. It was disgusting. It is subject to condemnation and sanction by society and by the law. But it did not occur in a public place.

Before its occupancy by Officer Horn, the booth was a "public place". After Officer Horn entered it, it was no longer "accessible to the public". It was, therefore, not a public place. At the time of the conduct, the booth into which Thompson intruded himself was private. To hold otherwise would be to say that one's private residence becomes a public place merely by the unauthorized and unwanted intrusion of a burglar or other trespasser.

Conversely, the statute would appear to require that the State prosecute and punish a person who, for the sole and legitimate purpose of urination, exposes himself in a public restroom. It does not suffice to say

**5.** The statute's aim at protecting the public from sexual display applies equally to those members of the public who choose to patronize adult bookstores. We note the following statement of a California court on this point.

"Not everyone who enters a dirty bookstore (euphemistically adjectived 'adult'), expects to be molested, propositioned, or subjected to an open view of live homosexual acts of others.... To attribute to each incoming customer the concurrent expectation *inter alia* that he or she will be solicited to perform sexual acts through the 'glory hole' of an ad-

joining motion picture booth would have a chilling effect upon such fundamental rights. It follows that those who perform sexual acts within view of neutral customers of the stores, or who expose themselves to them or solicit them to perform or participate in sexual activity, undeniably do so in a place open to the public and with the reasonable expectation that the customers (at least certain of them) are likely to be offended."
*People v. Adult World Bookstore,* 108 Cal.App.3d 404, 410, 166 Cal.Rptr. 519, 523 (1980) (footnotes omitted).

that in the latter situation there is no mens rea—no corrupt motive. Intent is not an element of the offense. Nor is it an element of the crime that the actor wishes to be viewed by members of the public.

Neither is it helpful to state that the exposure here, unlike that in *Lasko v. State* (1980) 2d Dist.Ind.App., 409 N.E.2d 1124, was visited upon a non-consenting viewer or participant. While the presence or absence of consent might constitute a rational and logical basis of distinction between what is or is not criminal conduct, it is of no moment here.

Were the question properly before us, it might be argued with a degree of merit that the statute is overly broad or defective. Our determination, however, must rest not upon mens rea, not upon consent, but solely upon whether the exposure occurred in a public place. It did not.

For this reason, I dissent.