Carolyn SWEENEY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–884–A–244.

Court of Appeals of Indiana,
Second District.

Dec. 26, 1985.

Nancy L. Cross, Franklin I. Miroff, Ancel, Miroff & Frank, P.C., Indianapolis, Charles A. Asher, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Carolyn Sweeney appeals her conviction for public indecency, a class A misdemeanor under I.C. 35–45–4–1 (Burns Code Ed. Repl.1985). The sole issue on appeal is whether Sweeney's conduct occurred in a "public place" within the meaning of the statute.[1]

---

1. The relevant section of the public indecency statute under which Sweeney was charged and convicted provides:
   "(a) A person who knowingly or intentionally, in a public place:
   (1) Engages in sexual intercourse;
   (2) Engages in deviate sexual conduct;
   (3) Appears in a state of nudity; or
   (4) Fondles the genitals of himself or another person;
   commits public indecency, a class A misdemeanor."
   I.C. 35–45–4–1 (Burns Code Ed.Repl.1985).

We reverse.

The relevant facts are as follows: On March 10, 1983, Joseph Brannon, a police officer in plain clothes, entered the Adult Toy & Gift Store at 6753 East 38th Street, in Indianapolis. Brannon first passed through an area of the store where there were other customers browsing through books, magazines and films. He then proceeded to an area where there were three viewing booths marked "A", "B", and "C". When he entered booth "B", he noticed that there was an inoperable lock on the door. He closed the door behind him and was then enclosed by three opaque walls and a glass partition.

Speaking over an intercom from the other side of the partition, Sweeney instructed Brannon to place coins in a timing machine in order to see her. He did so, after which a light illuminated the opposite side of the partition. Brannon could then see Sweeney who was clothed and sitting approximately two feet away on a small slanted stage with a curtain backdrop. Brannon deposited more money in the machine, after which Sweeney lay down in front of him, pulled her clothing aside and began to rub her genitals. Through a slot in the wall, he then tipped Sweeney $15.00, after which she exposed herself again and rubbed herself with her hands and with a vibrator. Thereafter, Brannon arrested her for public indecency.

Sweeney challenges the trial court's finding that the charged act occurred in a public place. She argues that she provided entertainment within the confines of a private room which was in a separate area of the store. She maintains that the specific area in question was not a public place because the only possible public access was into the viewer's portion of the area through a door which was closed throughout the entire performance. She claims further that even though the door was not locked, the mere fact that it was closed and had a lighted sign above it saying "in use" isolated the officer and the view of herself from the public. Sweeney cites *Lasko v. State* (1980) 2d Dist.Ind.App., 409 N.E.2d

1124, for the proposition that "private areas" may exist within a public place.

In *Lasko v. State*, defendant escorted a vice squad officer from a massage parlor reception area into a separate and locked room where both parties disrobed and Lasko massaged the officer and fondled his genitals. We reversed Lasko's conviction, based upon our conclusion that the described conduct did not occur in a "public place" within the meaning of the public indecency statute. In reaching this conclusion, we relied upon the following definitions of "public place", announced by our Supreme Court in *State v. Baysinger* (1979) 272 Ind. 236, 397 N.E.2d 580, *appeal denied sub nom. Dove v. Indiana* (1980) 449 U.S. 806, 101 S.Ct. 52, 66 L.Ed.2d 10:

" 'Webster defines "public" as "open to common and general use, participation, or enjoyment" of the public. It has been held that the term "public place" as used in statutes pertaining to gambling includes any place which for the time being is made public by the assemblage of people who go there with or without invitation and without restraint. *Roberts v. State*, 1908, 4 Ga. App. 207, 60 S.E. 1082, 1085.

. . . .

" 'From a consideration of the terms "accessible", "public", and "public place", as defined hereinabove, together with the purpose of the Act, we have concluded that the phrase "in any place accessible to the public" as used in §. 10–2330, *supra*, means any place where the public is invited and are [sic] free to go upon special or implied invitation—a place available to all or a certain segment of the public.' " 397 N.E.2d at 583.

Applying these definitions, we determined in *Lasko* that the room where the acts were committed was not a public place because "neither the public nor any segment thereof was invited, expressly or impliedly, to witness the illicit act." 409 N.E.2d at 1128. Moreover, the room was not accessible to the public while the prohibited conduct occurred. Nor was the

public free to enter "without restraint." *Id.*

The State would have us apply the holding of *Adims v. State* (1984) 3d Dist. Ind. App., 461 N.E.2d 740, which also involved nudity at an adult bookstore. In *Adims,* three dancers who had performed nude or partially nude upon a small stage encircled by six viewing booths with lockable doors were found guilty of public nudity in violation of the public indecency statute. Our Third District upheld all three convictions upon the ground that the common dance floor and surrounding booths in the bookstore fell within the definition of public place adopted in *Baysinger, supra,* 397 N.E.2d at 583.

 However, notwithstanding its obvious similarities, *Adims* is crucially unlike the case at bar. In *Adims,* as many as six viewers could simultaneously observe one or more nude dancers. From the stipulated exhibit in the instant case, it appears that the area in which defendant Sweeney engaged in the questioned conduct was enclosed on at least three sides. The rear or fourth side was bounded either by doors or a curtain. The enclosure on the front of the area was a plexiglass partition through which Sweeney could be viewed by the occupant of Booth B. That configuration of the area dictates our conclusion that it was not accessible to members of the public.

Thus, at best, the instant case is comparable to *Lasko* because it involves only two consenting adults, viewer and performer, and conduct which occurred in a place to which the public did not have access. Indeed, it was acknowledged in *Adims* that "private showings" conducted in booths from which the viewer could see only one performer may more closely parallel the massage parlor situation deemed not public in *Lasko,* but that it was not necessary to decide this question. *Adims, supra,* 461 N.E.2d at 743.

We employed a similar analysis in *Thompson v. State* (1985) 2d Dist. Ind. App., 482 N.E.2d 1372, in which we affirmed the public indecency conviction of a defendant who had exposed his genitals to an officer by placing his penis through a "glory hole" into an adjoining film-viewing booth occupied by the officer. The majority opinion in *Thompson* stated:

"Arguably, once a patron enters a film-viewing booth, shuts and secures the door behind him he converts what was once a place accessible to the public to a place where the public is no longer free to enter without restraint. Accordingly, indecent activity occurring within the confines of that booth may well fall outside the proscription of the public indecency statute. Such arrangement parallels the locked room situation in *Lasko* ...." 482 N.E.2d at 1376.

Sweeney's conduct was without question indecent. However, it was not publicly indecent because it did not occur in a public place, either within the meaning of the public indecency statute or within the definitions set forth in *Baysinger, supra,* 397 N.E.2d 580.

Accordingly, the judgment is reversed.

MILLER, J. (participating by designation) and SHIELDS, J., concur.