## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 30 2019, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Melinda K. Jackman-Hanlin
Greencastle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeremy Ray Allgood, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 30, 2019 <br><br> Court of Appeals Case No. <br> 18A-CR-2064 <br><br> Appeal from the Hendricks <br> Superior Court <br><br> The Honorable Rhett M. Stuard, <br> Judge <br><br> Trial Court Cause No. <br> 32D02-1712-CM-1699 |

**Tavitas, Judge.**

# Case Summary

Jeremy Ray Allgood appeals his conviction, following a bench trial, for public indecency, a Class A misdemeanor. We affirm.

# Issue

Allgood raises one issue on appeal, which is whether the State presented sufficient evidence to establish that Allgood was in a "public place" when he committed an act of public indecency.

# Facts

On the morning of December 25, 2017, Deputy Robert Lenover of the Hendricks County Sheriff's Department worked an off-duty security job at the Walmart store in Danville, Indiana.[1] The store was closed for the Christmas holiday. Deputy Lenover's squad car was the lone vehicle in the parking lot and was "at the [rear] southwest corner of the lot [ ] facing northbound so [Deputy Lenover] could observe the store." Tr. Vol. II p. 20.

Although the store was closed for the holiday, "multiple people throughout the day" still "approach[ed] [Deputy Lenover]" in the parking lot. *Id.* at 21. "[P]eriodically through the day," "cars pull[ed] in, [and] realize[d] the store [wa]s not open[.]" *Id.* at 21. "Approximately ten" would-be patrons entered

---

[1] Deputy Lenover's work shift was from 6:00 a.m. until 12:00 p.m.

the parking lot, and some patrons "attempt[ed] to bring [Deputy Lenover] cookies [and] soda, [and] asked if the store [wa]s open[.]" *Id.* at 20, 25.

[5] At approximately 8:00 a.m., Allgood pulled into the lot from the east and parked facing westbound, but did not exit his car. Deputy Lenover watched Allgood's car for approximately five minutes, then drove over, parked behind Allgood's car, and exited the squad car.

[6] Although the outdoor temperature was approximately twenty-five degrees Fahrenheit, Allgood's engine was turned off. Deputy Lenover approached Allgood's vehicle from the rear passenger side and saw Allgood masturbating in the driver's seat. Allgood's pants were pulled down mid-thigh, and he "had a cell phone in one hand and his other hand was down his pants with what appeared to be a t-shirt or some kind of rag. [Allgood's] hand was in his pants going up and down" in a "jerking" motion "[n]ear his genitals." *Id.* at 22, 27. Deputy Lenover tapped the passenger window, and Allgood "quickly pulled his pants up and covered himself[.]" *Id.* at 22.

[7] Deputy Lenover instructed Allgood to exit the vehicle, advised him of his *Miranda* rights and, after Allgood agreed to speak to him, "[a]sked [Allgood] what he was doing." *Id.* at 22-23. Allgood responded that "he believed he had the lot to himself and he was masturbating." *Id.* at 23. Deputy Lenover "called for an on-duty unit," and Allgood was arrested. *Id.* at 26.

[8] On December 27, 2017, the State charged Allgood with public indecency, a Class A misdemeanor. On August 1, 2018, the trial court conducted a bench

trial. Deputy Lenover and Allgood were the only testifying witnesses. Deputy Lenover testified to the foregoing facts; he testified further that members of the general public are allowed to traverse the Walmart parking lot. *See id*. at 22.

[9] Allgood testified that, before his arrest, he was released from a nearby work release facility on a fifteen-hour day pass to spend Christmas with his family. Allgood testified that he exited the facility at 7:00 a.m., but remained in the facility's parking lot until "7:30, 7:45ish" because "the heat in [his] car is really bad so [he] had to spend about thirty to forty-five minutes to warm it up." *Id*. at 29. Allgood testified that he then drove to Walmart, where he turned off his engine[2] and awaited his parents' call or text message telling him that he "could

---

[2] Later, Allgood testified as follows regarding his reasoning for turning off his engine at Walmart:

Q How cold was it that day?

A Uh, I would say probably about twenty-five maybe.

Q Why were you sitting in a vehicle that was off?

A Because like I stated earlier my, uh, heater does not work very well in the car so it does – it don't matter if I have the car on or not.

Q You testified that you spent time at Work Release warming your vehicle up –

A Yes.

Q -- so then it would give – if it's that difficult to get your vehicle warm, why would you let it get cold again?

A I'd rather not use the gas.

Q Okay. So but you used the gas to warm it up in the first place?

A Yes.

Tr. Vol. II p. 37.

head to their house for Christmas." *Id*. at 34. Allgood denied that his pants were unzipped or pulled down or that he was masturbating. He testified that when Deputy Lenover asked him what he was doing, Allgood sarcastically replied, "What did you think I'm sitting here masturbating?" *Id*. at 34. Allgood testified further that, with the exception of Deputy Lenover's squad car, no cars or patrons were in the parking lot.

[10] At the close of the evidence, the trial court found Allgood guilty and sentenced him to 180 days executed in the Hendricks County Jail. Allgood now appeals.

## Analysis

[11] Allgood challenges the sufficiency of the evidence to support his conviction. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State*, 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State*, 481 N.E.2d 78, 84 (Ind. 1985), *cert. denied*). Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id*. "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id*.; *see also McCallister v. State*, 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). Further, "[w]e will affirm the conviction unless no reasonable fact-finder could find the elements of

the crime proven beyond a reasonable doubt." *Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)).

[12] To convict Allgood, the State was required to prove each element of public indecency beyond a reasonable doubt. Indiana Code § 35-45-4-1(a) provides:

> A person who knowingly or intentionally, in a public place:
>
> (1) engages in sexual intercourse;
>
> (2) engages in other sexual conduct (as defined in IC 35-31.5-2-221.5);
>
> (3) appears in a state of nudity with the intent to arouse the sexual desires of the person or another person; or
>
> (4) fondles the person's genitals or the genitals of another person;

commits public indecency, a Class A misdemeanor. The State charged Allgood with violating subsection (a)(3).

[13] Allgood challenges only the sufficiency of the evidence to prove that "the inside of [his] car parked at a closed Walmart's parking lot on Christmas Day constituted a public place," under the statute. Appellant's Br. p. 4. He argues:

> [he] was inside a vehicle with all doors shut and windows closed. It was Christmas day and the Walmart was closed; there were no other cars parked in the parking lot; no other cars entered the parking lot while Allgood was parked there; and no individuals

were in the parking lot.  [Thus,] [t]he inside of Allgood's personal vehicle should not have constituted a public place . . . .

*Id*. at 7.  We cannot agree.

The aim of the public indecency statute is to "protect the non-consenting viewer who might find [ ] a spectacle repugnant." *Thompson v. State,* 482 N.E.2d 1372, 1375 (Ind. Ct. App. 1985).  This court has previously held that a "public place," for purposes of a crime of public indecency, is any place that members of the public are free to go without restraint.  *Long v. State*, 666 N.E.2d 1258, 1260 (Ind. Ct. App. 1996).  For purposes of determining whether a place is a "public place" within the meaning of the public indecency statute, whether the public *does*, in fact, enter the place is simply one factor; the factor of "reasonably foreseeable, potential witnessing is also significant." *Lasko v. State*, 409 N.E.2d 1124, 1130 (Ind. Ct. App. 1980).

> "Public place" is defined neither by the public indecency statute nor by the public intoxication statute.  However, on numerous occasions in the context of public intoxication, we have defined public place consistent with the definition in *Long.  See, e.g., Price v. State,* 600 N.E.2d 103, 115 (Ind. Ct. App. 1992), *vacated in part by Price v. State,* 622 N.E.2d 954 (Ind. 1993) (finding that a public place "is  a place open to common and general use, participation and enjoyment; a place accessible to the public"); *Martin v. State,* 499 N.E.2d 273, 276 (Ind. Ct. App. 1986) (stating that a public place is one "visited by many persons, and usually accessible to the neighboring public"); *Heichelbech v. State,* 258 Ind. 334, 340, 281 N.E.2d 102, 106 (1972) (holding that a business establishment open to the public was "a public place or place of public resort").  Even in those public intoxication cases where the term public place was not specifically defined, the facts are

similar to those in the instant case. *See, e.g., Atkins v. State,* 451 N.E.2d 55, 56 (Ind. Ct. App. 1983) (passenger in a vehicle on a public highway is in a public place for purposes of public intoxication statute); *Miles v. State,* 247 Ind. 423, 424-25, 216 N.E.2d 847, 849 (Ind. 1966) (defendant in the cab of a truck that was parked approximately three to four feet from the traveled portion of the highway was in a public place for purposes of public intoxication statute). [ ] [T]here is no significant difference between what constitutes a public place in the context of the public indecency statute and what constitutes a public place in the context of the public intoxication statute.

*Whatley v. State*, 708 N.E.2d 66, 67-68 (Ind. Ct. App. 1999).

[16] Additionally, in defining a "public place," our Supreme Court has previously adopted the following definition: "[a place] that the public is invited to come to . . . and has access to [ ] for the purpose within the scope of the business there maintained." *State v. Baysinger*, 397 N.E.2d 580 (Ind. 1979) (defining a "public place" in the context of a prohibition case). Similarly, this court has defined a "public place" as "any place where the public is invited and are free to go upon special or implied invitation[;] a place available to all or a certain segment of the public." *Wright v. State*, 772 N.E.2d 449, 456 (Ind. Ct. App. 2002) (defining a "public place" in a public indecency case) (italics omitted). As the *Wright* panel reasoned, "A 'public place' does not mean a place devoted solely to the use of the public; but it means a place which is in point of fact public, as distinguished from private[;] a place that is visited by many persons, and usually accessible to the neighboring public." *Id*.

[17] Here, Deputy Lenover testified that members of the local community are free to traverse the Walmart parking lot; and that, on the date in question—a holiday, approximately ten would-be patrons pulled into the parking lot and "realize[d] the store [wa]s not open." Tr. Vol. II pp. 20, 25. Under the circumstances, we wholly find that the parking lot of a major shopping establishment is a place that members of the public are free to frequent without restraint. That Allgood was in the passenger compartment of his vehicle when he committed the charged offense is immaterial.

[18] Fortunately, no one, except Deputy Lenover, witnessed Allgood's activities; however, that does not absolve him, as the aim of the statute is to protect, from "reasonably foreseeable, potential witnessing," non-consenting viewers who *might* deem Allgood's conduct repugnant. *See Lasko*, 409 N.E.2d at 1130. The State presented sufficient evidence to prove that Allgood was in a "public place" when he committed the charged offense.

# Conclusion

[19] Sufficient evidence supports Allgood's conviction. We affirm.

[20] Affirmed.

Baker, J., and May, J., concur.