**Kim GATENA, Plaintiff,**

v.

**COUNTY OF ORANGE, Defendant.**

**No. 98–417CIVORL22B.**

United States District Court,
M.D. Florida,
Orlando Division.

Nov. 5, 1999.

## ORDER

CONWAY, District Judge.

### I. Introduction.

This cause is before the Court on a challenge to the constitutionality of section 26–26 of the Orange County Code, which prohibits public nudity with some exceptions. Plaintiff, Kim Gatena ("Gatena"), is a nude dancer. Gatena believes that a nude woman engaged in dance, combined with music, is an art form which conveys "an important message of sexuality and eroticism." [Compl. § IV.C.] Gatena claims that Orange County's public nudity ordinance unconstitutionally infringes upon her right to continue in her chosen profession, expand her livelihood, and promote her message of eroticism. Gatena's challenges to the Code are facial and as applied.

Gatena and the Defendant, County of Orange ("the County"), have filed cross-motions for summary judgment. (Docs. 41 & 61.) The parties believe there are no material issues of fact to be tried. *See* Pretrial Statement (Doc. 70). Upon considering the pleadings and other supporting material submitted by both parties, the Court determines that the County is entitled to summary judgment on all of Gatena's claims.

### II. Undisputed Facts.

On October 27, 1992, the Orange County Board ("the Board") adopted Ordinance No. 92–33 ("the Ordinance"), subsequently codified at § 26–26 of the Orange County Code ("OCC"), entitled "Offenses Involving Public Peace and Order, Public Nudity." The Ordinance bans public nudity, subject to certain exemptions. The term "nude" means

> to display or expose the male or female genitals, public area, or the female breast with less than a fully opaque covering of any part of the areola and nipple, or the showing of the covered male genitals in a discernibly turgid state. . . .

OCC § 26–26(d)(2). A "public place" includes, but is not limited to

a street, sidewalk, park, beach, business or commercial establishment (whether for profit or not for profit and whether open to the public at large or where entrance is limited by a cover charge or membership requirement), bottle club, hotel, motel, restaurant, night club, country club, cabaret, or meeting facility utilized by a religious, social, fraternal or similar organization.

*Id.* § 26–26(d)(5).

Under the Ordinance, persons may appear nude in the following circumstances:

(1) When a person appears nude in a public place provided or set apart for nudity . . . . ;[1] or

(2) When the conduct of being nude cannot constitutionally be prohibited by this section because it constitutes part of a bona fide live communication, demonstration or performance by such person wherein such nudity is expressive conduct incidental to and necessary for the conveyance or communication of a genuine message or public expression, and is not a guise or pretense utilized to exploit nudity for profit or commercial gain . . . . ; or

(3) When the conduct of being nude cannot constitutionally be prohibited by this section because it is otherwise protected by the United States Constitution or Florida Constitution.

OCC § 26–26(f)(1)(2) & (3) (footnote added).

Gatena has never been arrested for violating the Ordinance. However, since the Ordinance's passage, she has ceased dancing nude. Gatena asserts that the Ordinance prevents her from fulfilling her desire to perform nude in an adult setting or in a non-adult venue in a play or skit.

[Gatena Depo. at 77.][2] Gatena contends that the Ordinance's "bona fide live communication" exemption is vague and unclear. As a result, Gatena fears that she may be subject to prosecution for engaging in nude performances which she deems to be constitutionally protected. *Id.* at 79, 86–88.

### III. Summary Judgment Standard.

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'" *Cohen v. United American Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir.1996) (quoting *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1396, *modified on other grounds*, 30 F.3d 1347 (11th Cir. 1994), *cert. denied*, 513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995)). "There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen*, 83 F.3d at 1349. The Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir.1993), *reh'g and reh'g en banc denied*, 16 F.3d 1233 (11th Cir.1994).

---

1. Public places "set apart for nudity" include public restrooms, showers, locker rooms, hotels, motels, etc.

2. In response to the County's first set of interrogatories, Gatena stated:

I would like to dance nude in a night club. In the alternative, I would like to perform or dance nude in a theatrical night club. I would also be interested in owning or operating a theatrical night club where nude theatrical and dance productions occur. The productions could run the gambit [sic] from dance-theater including parodies, skits and sexual satire.

[Pl.'s Mot. Summ. J. at 10–11.]

## IV. Analysis.

Gatena raises three separate claims in her complaint seeking a declaratory judgment and permanent injunction prohibiting the County and its agents from enforcing the Ordinance. First, Gatena claims that facially and as applied, the Ordinance is content or viewpoint based in violation of the First and Fourteenth Amendments to the United States Constitution. Second, Gatena argues that the Ordinance is unconstitutionally vague [3] (both facially and as applied) in violation of the First, Fifth, and Fourteenth Amendments to the Constitution. Finally, Gatena argues that the Ordinance's exemptions for certain types of nudity are arbitrary and capricious. The County defends the Ordinance's constitutionality. Additionally, the County preliminarily raises various justiciability issues, including whether Gatena has standing to bring her claims and whether her claims are ripe for review.

### A. Justiciability of Gatena's claims.

As a threshold matter, the County challenges whether Gatena's claims are justiciable. Specifically, the County argues that Gatena's as-applied challenge to the Ordinance is not ripe for review and that Gatena lacks standing to bring overbreadth [4] and vagueness challenges (both facial and as applied). The County focuses its justiciability arguments on Gatena's ability to challenge the *exemptions* listed in § 26–26(f) of the Ordinance. In so doing, the County misapprehends the gist of Gatena's claims.

▉ Gatena challenges not only the language contained in the exemption, but the Ordinance as a whole. Gatena complains

that "[f]acially and as applied, the ordinance is content or viewpoint based rather than content or viewpoint neutral in violation of the First and Fourteenth Amendments ...." *See* Pl.'s Compl. at 4 (emphasis omitted). Gatena further states that "[u]nless the court prevents the enforcement of the ordinance, [she] will be denied her constitutional right to dance nude—both for herself as well as her admirers and patrons." *Id.* She further argues in her motion for summary judgment that "[t]he ordinance should not be applied in an arbitrary or discriminatory manner. It should be fair. If nude performances occur at other venues (sanctioned by the county), they should likewise be permitted in an adult nightclub setting." [Pl.'s Mot. Summ. J. at 8.] In analyzing whether Gatena has standing to bring facial and as-applied challenges, the Court considers Gatena's objection to the validity of the entire Ordinance. *See National Advertising v. City of Fort Lauderdale,* 934 F.2d 283 (11th Cir.1991).

The Supreme Court has articulated three constitutional standing requirements: injury, causation, and redressability. *See Northeastern Florida Contractors v. Jacksonville,* 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). Gatena meets these three requirements. The Ordinance's ban on public nudity clearly covers persons employed as nude dancers in the adult entertainment industry. Gatena wishes to dance nude (in a non-obscene manner) as a form of public entertainment within the Orange County adult entertainment industry. *See* Pl.'s Compl. at 2. Gatena wants to continue in her chosen

---

**3.** Gatena's vagueness challenge is based on the Ordinance's "bona fide live communication" language.

**4.** Gatena's complaint pleads an overbreadth challenge. [Compl. § IV.K.] However, Gatena does not make an overbreadth argument in her motion for summary judgment, nor does she list overbreadth as an issue of law to be determined by the Court. [Pretrial Statement § X.A.] Therefore, the Court deems Gatena's overbreadth argument to be waived. In any

event, the Ordinance is not overbroad. *See Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); *Café 207, Inc. v. St. Johns County,* 66 F.3d 272, 273 (11th Cir.1995), *aff'g,* 856 F.Supp. 641 (M.D.Fla.1994); *Triplett Grille, Inc. v. City of Akron,* 40 F.3d 129, 136 (6th Cir.1994) (striking down an ordinance banning all public nudity as overbroad because it did not contain and exception for serious artistic entertainment).

profession (nude erotic dancer), expand her livelihood, and promote the "important message of sexuality and eroticism." *Id.* The ban on nudity prevents Gatena from doing so, lest she face prosecution. Accordingly, the County's conduct in passing the Ordinance has injured Gatena. Such an injury could be redressed if Gatena obtains a favorable federal court decision, that is, if the Court were to find the entire Ordinance, including the exemption language, unconstitutional.

The County argues that Gatena lacks standing because she has not been arrested or threatened with prosecution under the Ordinance. However, Gatena's interest in engaging in the Ordinance's prohibited conduct can establish standing even though the threat of enforcement arises from the very existence of the statute. *See Leverett v. City of Pinellas Park,* 775 F.2d 1536, 1539 (11th Cir.1985) (citing *Hardwick v. Bowers,* 760 F.2d 1202, 1206 (11th Cir.1985)). Moreover, "[a] court can be most certain that a constitutional challenge grows out of a genuine dispute where the allegedly unconstitutional statute interferes with the way the plaintiff would normally conduct his or her affairs." *See id.* at 1539 (citation omitted); *see also Florida League of Professional Lobbyists v. Meggs,* 87 F.3d 457, 459 (11th Cir.1996); *Cannabis Action Network v. City of Jacksonville Beach,* 20 F.Supp.2d 1317, 1322–1323 (M.D.Fla.1998). It is undisputed that the Ordinance interferes with Gatena's desire to dance in the nude. Thus, the Court finds that Gatena has standing to pursue her claims.

▬ Additionally, Gatena's claims are ripe for review. The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes. *See Abbott Lab. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (holding that action was ripe before prosecution occurred where appellants faced choice between complying with possibly void regulation and risking "serious" civil penalties). Gatena may seek pre-enforcement review even though she has not been arrested under the Ordinance. It is well settled that a party need not await prosecution before challenging the validity of a statute. *See, e.g., Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) ("[T]he hapless plaintiff [must choose] between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding."). Furthermore, the doctrine of ripeness is more loosely applied in the First Amendment context. *See Digital Properties, Inc. v. City of Plantation,* 121 F.3d 586, 589 (11th Cir. 1997) ("the injury requirement is most loosely applied when a plaintiff asserts a violation of First Amendment rights based on the enforcement of a law, regulation or policy"); *Cheffer v. Reno,* 55 F.3d 1517, 1523 n. 12 (11th Cir.1995).[5]

## B. The Ordinance is not content or viewpoint based.

▬ There can be no doubt that nude dancing is expressive conduct entitled to a modicum of First Amendment protection. *See Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–66, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (finding that "nude dancing ... is expressive conduct within the outer perimeters of the First Amendment"); *see also Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 66, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *California v. LaRue,* 409 U.S. 109, 118, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). Gatena contends that the Ordinance violates the First Amendment's protection of nude dancing because it is content or viewpoint based. The gravamen of Gatena's complaint lies in the narrowing

---

5. The County cites *Digital Properties, Inc.* to support its argument that Gatena's First Amendment claim is not ripe. *Digital Properties, Inc.* is distinguishable. In that case, the

court held the plaintiff's claims were not ripe because the plaintiff failed to exhaust his administrative remedies under a licensing scheme.

construction Orange County has placed on the Ordinance. The Ordinance bans all nudity except, *inter alia,* where the act of being nude

> constitutes part of a bona fide live communication, demonstration or performance by such person wherein such nudity is expressive conduct incidental to and necessary for the conveyance or communication of a genuine message or public expression, and is not a guise or pretense utilized to exploit nudity for profit or commercial gain.

OCC § 26–26(f)(2). Gatena argues that this exception effectively bans nudity in adult entertainment establishments but not in "high-culture" establishments like the theater or ballet. Such a distinction, Gatena argues, renders the Ordinance content and viewpoint based in violation of the First Amendment because "the government cannot selectively legislate the places where nude dancing is permitted depending on whether it believes the expression at issue is 'bona fide' or 'legitimate.'" (Doc. 42 at 1.) Gatena's argument is without merit in light of the Supreme Court's opinion in *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) and the Eleventh Circuit's per curiam decision in *Café 207, Inc. v. St. Johns County,* 66 F.3d 272, 273 (11th Cir. 1995), *aff'g,* 856 F.Supp. 641 (M.D.Fla. 1994).

In *Barnes,* the Supreme Court tested the constitutionality of Indiana's public indecency statute on a challenge from two adult entertainment establishments and individual dancers employed therein. *See Barnes,* 501 U.S. at 562–63, 111 S.Ct. 2456. Indiana's law facially banned public nudity "across the board." *Id.* at 566, 111 S.Ct. 2456. Notwithstanding that fact, the Court observed that "[t]he Indiana Supreme Court appeared to give the public indecency statute a limiting construction to save it from a facial overbreadth attack ...." *Id.* at 564 n. 1, 111 S.Ct. 2456. In that regard, when testing the statute's validity, the Indiana Supreme Court held that "[t]here is no right to appear nude in public. Rather, it may be constitutionally

required to tolerate or to allow some nudity as a part of some larger form of expression meriting protection, when the communication of ideas is involved." *Id.* (quoting *State v. Baysinger,* 272 Ind. 236, 247, 397 N.E.2d 580 (1979)). Despite this narrowing construction, the *Barnes* Court determined that the Indiana law should be subject to intermediate scrutiny under the four-part test announced in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

The *O'Brien* test is appropriately utilized where "speech" and "nonspeech" elements are combined in the same course of conduct. O'Brien was arrested for burning his draft card on the steps of a Boston courthouse before a large crowd. *See id.* at 369, 88 S.Ct. 1673. The law under which O'Brien was indicted prohibited the wilful and knowing mutilation of draft cards. *See id.* at 370, 88 S.Ct. 1673. O'Brien argued that the burning of his draft card constituted protected "symbolic speech;" thus, the law prohibiting the destruction of draft cards unconstitutionally interfered with his First Amendment freedom of expression. *See id.* The Court rejected O'Brien's argument that the First Amendment protects all modes of communication of ideas by conduct, stating:

> We cannot accept the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea. However, even on the assumption that the alleged communicative element in O'Brien's conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This Court has held that when "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.

*Id.* at 376, 88 S.Ct. 1673. The *O'Brien* Court then enunciated a four-part test to

determine whether a government regulation which incidentally limits First Amendment freedoms is sufficiently justified.[6]

In *Barnes,* the Court chose to utilize the *O'Brien* test in analyzing the Indiana law's validity, agreeing that Indiana's restriction on nude dancing was a valid time, place, or manner restriction. *See Barnes,* 501 U.S. at 566, 111 S.Ct. 2456. The Court noted that Indiana's law did not ban nude dancing *per se,* rather, it banned all public nudity. *Id.* In other words, the Court found the Indiana law in question to be content neutral, meriting intermediate scrutiny to determine whether the incidental limitation on protected expression, i.e., nude dancing, was sufficiently justified by the governmental interest. Applying *O'Brien,* the Court upheld Indiana's public indecency statute despite its incidental limitations on some expressive activity. *See id.* at 567, 111 S.Ct. 2456.

Significant to the instant action is *Barnes'* treatment of the Indiana statute as *content neutral. Barnes'* two concurring opinions are especially enlightening on this point. Indeed, Justice Scalia wrote:

> Respondents also contend that the statute, as interpreted, is not content neutral in the expressive conduct to which it applies, since it allegedly does not apply to nudity in theatrical productions.... I am not sure that theater versus non-

theater represents a distinction based on content rather than format, but assuming that it does, the argument nonetheless fails for the reasons the plurality describes, ante, at 564 n. 1, 111 S.Ct. 2456....

*Barnes,* 501 U.S. at 574 n. 2, 111 S.Ct. 2456 (Scalia, J., concurring). Justice Souter further explained:

> the secondary effects rationale on which I rely here would be open to question if the State were to seek to enforce the statute by barring expressive nudity in classes of productions that could not readily be analogized to the adult films at issue in *Renton* .... It is difficult to see, for example, how the enforcement of Indiana's statute against nudity in a production of "Hair" or "Equus" somewhere other than an "adult" theater would further the State's interest in avoiding harmful secondary effects, in the absence of evidence that expressive nudity outside the context of *Renton*-type adult entertainment was correlated with such secondary effects.

*Id.* at 584 n. 2, 111 S.Ct. 2456 (Souter, J., concurring) (citation omitted).

Gatena's argument that the Supreme Court would not have upheld the Indiana public nudity statute if it had "prohibited nude bar room dancing, while permitting dancing as part of a theatrical performance," is clearly wrong.[7] In fact, the

---

6. Under the four-part test, a government regulation is sufficiently justified: 1) if it is within the constitutional power of the Government; 2) if it furthers an important or substantial governmental interest; 3) if the governmental interest is unrelated to the suppression of free expression; and 4) if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *See id.* at 367, 88 S.Ct. 1673.

7. Gatena mistakenly argues that *Barnes* does not apply here because the public indecency statute there banned all nudity "across the board." *Barnes,* 501 U.S. 560, 566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). On the contrary, five Justices recognized that the Indiana Supreme Court imposed a limiting construction on the Indiana statute in *State v.*

*Baysinger,* 272 Ind. 236, 247, 397 N.E.2d 580 (1979), much like the exemption language contained in the Ordinance here.

Gatena erroneously asserts that the Indiana Supreme Court later found in *Erhardt v. State,* 468 N.E.2d 224 (Ind.1984), that nudity occurring during an erotic theatre performance fell within the public nudity prohibition. [Pl.'s Mot. Summ. J. at 3 n. 1.] Gatena incorrectly reads *Erhardt.* In that case, a waitress and several other contestants appeared in the "Miss Erotica of Fort Wayne" contest held at a theater. *See Erhardt v. State,* 463 N.E.2d 1121, 1122 (Ind.App. 4 Dist.1984). The contest included a dance competition during which Erhardt removed all of her clothing except a G-string and scotch tape crisscrossed over her nipples. *See id.* Erhardt was subsequently arrested and convicted un-

Court indicated just the opposite when it noted that a public indecency statute without such a limiting construction may be subject to an overbreadth challenge. *See id.* at 564 n. 1 & 584 n. 2, 111 S.Ct. 2456.

The Indiana public indecency law and Orange County's Ordinance define public nudity almost identically.[8] Both laws are subject to limiting constructions which permit certain forms of nude expression. Thus, following the analysis in *Barnes,* the exemption language at issue does not render the Ordinance content or viewpoint based.

On this point, the Court is also guided by the Eleventh Circuit's decision in *Café 207, Inc. v. St. Johns County,* 66 F.3d 272, 273 (11th Cir.1995) (per curiam), *cert. denied,* 517 U.S. 1156, 116 S.Ct. 1544, 134 L.Ed.2d 647 (1996). There, the court upheld a virtually identical ordinance when it affirmed District Judge William Terrell Hodges' decision in *Café 207, Inc. v. St. Johns County,* 856 F.Supp. 641 (M.D.Fla. 1994). The Eleventh Circuit affirmed Judge Hodges' decision by adopting the reasoning of his memorandum opinion; thus, Judge Hodges' opinion is highly instructive here.

In 1992, the plaintiff in *Café 207* opened a nude entertainment restaurant called Café Erotica. Shortly thereafter, St. Johns County passed an ordinance which, with certain exceptions, banned all public nudity. The exceptions in the St. Johns ordinance are virtually identical to those listed in the Ordinance at issue. Orange County's "bona fide live communication"

exception, on which Gatena primarily bases her First Amendment argument, is clearly modeled after the exemption language found in the St. Johns ordinance. St. Johns' ordinance does not proscribe public nudity

> [w]hen the conduct of being Nude can not legally be prohibited by this ordinance (i) because it constitutes a part of a bona fide live communication, demonstration or performance by such Person wherein such nudity is expressive conduct incidental to and necessary for the conveyance or communication of a genuine message or public expression and is not a guise or pretense utilized to exploit nudity for profit or commercial gain
> . . . .

*Id.* at 648. Although the St. Johns ordinance contains this exemption language, Judge Hodges applied the *O'Brien* test to determine whether the ordinance's incidental limitation on expressive activity was sufficiently justified.

Gatena argues that *Barnes* and *Café 207,* applying *O'Brien,* do not control because those cases did not involve challenges based on content or viewpoint based discrimination. As discussed in *Barnes,* the intermediate scrutiny test set forth in *O'Brien* applies to laws regulating the *unprotected conduct* of public nudity, even if the law has an incidental impact on some protected expression. Since the instant *Ordinance is the same type found in Barnes and Café 207,* it logically follows that the Ordinance is not content or viewpoint based, but is instead content neutral,

---

der Indiana's public indecency statute. *See id.*

The Indiana Court of Appeals reversed Erhardt's conviction because there was no showing that Erhardt's conduct was lewd and because it found Erhardt's conduct was entitled to First Amendment protection. Judge Conover dissented because he believed Erhardt's conduct fell within the statute's prohibition and Erhardt failed to raise her First Amendment challenge timely. *Id.* at 1126–27. Agreeing with Judge Conover, the Indiana Supreme Court reversed the Court of Appeals and upheld Erhardt's conviction. 468 N.E.2d at 225. The Indiana Supreme Court did not

disturb the indecency statute's limiting construction advanced in *Baysinger,* nor did it hold that Indiana's public nudity statute bans all nudity, regardless of its expressive content.

**8.** Indiana's anti-nudity law prohibits persons from showing their buttocks, *see* Ind.Code § 35–45–4–1 (1988) (reproduced in *Barnes,* 501 U.S. at 569 n. 2, 111 S.Ct. 2456), while Orange County's ordinance does not, *see* OCC § 26–26(d)(2). Orange County's nudity law requires females to cover a larger portion of their breasts. *Compare* OCC § 26–26(d)(2) *with* Ind.Code § 35–45–4–1 (1988) (reproduced in *Barnes,* 501 U.S. at 569 n. 2, 111 S.Ct. 2456).

requiring scrutiny under the *Barnes–O'Brien* framework.[9]

### C. The Ordinance passes the *O'Brien* test.

■ In applying the *O'Brien* test, the Orange County Board of Commissioners' preambulatory findings inform the Court's analysis. The Ordinance contains the following relevant findings:

\*     \*     \*     \*     \*     \*

(5) The appearance of persons in the nude in public places which are not public places provided or set apart for nudity generally increases incidents of prostitution, sexual assaults and batteries, attracts other criminal activity to the community, encourages degradation of women, and facilitates other activities which break down family structure and values; and

(6) Without regulation, appearing nude in a public place which is not a public place provided or set apart for nudity constitutes harmful conduct; and

(7) Orange County is a family oriented area; and

(8) Orange County is an area that is known for and whose economy is largely dependent upon its popular tourist and family oriented attractions . . . .

(9) Regulation of public nudity will protect and preserve the public health, safety and welfare of the people of Orange County . . . .

(10) Nonregulation of persons appearing nude in public places . . . would encourage entities and persons to exploit nudity for profit or commercial gain and to advertise outside of Orange County . . . and thus would encourage the influx . . . of persons seeking to observe and/or participate in such nudity, and to participate in the disorderly, harmful and illegal conduct that is associated therewith . . . .

OCC § 26–26(c)(5)(6)(7)(8)(9) & (10).

*O'Brien*'s first prong requires that Orange County have the constitutional power to pass the Ordinance in question. Neither party challenges Orange County's power to pass an ordinance proscribing public nudity. "The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals." *See Barnes,* 501 U.S. at 569, 111 S.Ct. 2456 (citing *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 61, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973)). The Ordinance lists as one of its findings the County's desire to regulate public nudity in order to "protect and preserve the public health, safety and welfare of the people of Orange County . . . ." OCC § 26–26(c)(9). Thus, the Ordinance meets *O'Brien*'s first element.

Second, the Ordinance serves a substantial and important governmental interest in protecting public order and property values and reducing the type of secondary effects associated with the type of nudity

---

**9.** At least one post-*Barnes* court directly addressed the same content/viewpoint argument that Gatena raises here. In *J & B Entertainment, Inc. v. City of Jackson,* 152 F.3d 362 (5th Cir.1998), the owner of a night club featuring nude dancing claimed that the City of Jackson's public nudity ordinance was not content neutral because it allows persons "engaged in expressing a matter of serious literary, artistic, scientific, or political value" to appear nude in public. *See id.* at 366. The Fifth Circuit rejected this argument, explaining that even though the Indiana public indecency law in *Barnes* was given a similar limiting construction, a plurality of the Supreme Court and Justice Souter found the statute to be content neutral. *See id.* at 376. The appellate court stated:

> Acceptance of J & B's argument would place Jackson and other governments between Scylla and Charybdis: if a government attempted to ban all nudity, its enactment would become susceptible to an overbreadth challenge, while if it included an exception for some nudity, it would open itself up to a content neutrality challenge.

*Id.* at 377; *accord Farkas v. Miller,* 151 F.3d 900 (8th Cir.1998) (upholding the constitutionality of Iowa's public nudity statute containing an exemption similar to the instant Ordinance). This Court agrees with the Fifth Circuit's reasoning and analysis in *J & B Entertainment, Inc.*

proscribed. A plurality in *Barnes* explicitly found that Indiana's public indecency statute, like the one at bar, "further[ed] a substantial government interest in protecting order and morality." *Barnes*, 501 U.S. at 569, 111 S.Ct. 2456; *see also Café 207*, 856 F.Supp. at 644. Justice Souter, concurring in *Barnes*, relied on a different substantial governmental interest. He found that, because the state has a substantial interest in eradicating the pernicious secondary effects associated with adult entertainment establishments,[10] legitimate restrictions on this type of entertainment are permitted even though they infringe on the protection afforded such nude dancing. *Id.* at 582, 111 S.Ct. 2456. In Justice Souter's view:

> the interest asserted by petitioners in preventing prostitution, sexual assault, and other criminal activity, although presumably not a justification for all applications of the statute, is sufficient under *O'Brien* to justify the State's enforcement of the statute against the type of adult entertainment at issue here.

*Id.* at 583, 111 S.Ct. 2456.

Although much debate surrounds which of *Barnes'* opinions constitutes the law of the land, it is unnecessary to resolve that question here because the Ordinance survives scrutiny under the plurality and Justice Souter's concurrence (sanctioned by the Eleventh Circuit)[11] with respect to

O'Brien's second prong.[12] The findings reveal that, in passing the Ordinance, the Board was seeking to protect public order and property values. *See* OCC § 26–26(c)(5) & (9). Further, a transcript of the public hearing held on Orange County's proposed public nudity law confirms that the Board sought to prevent the harmful secondary effects associated with public nudity in adult entertainment establishments in Orange County. *See* Doc. 25, Ex. 2; OCC § 26–26(c)(5) & (10).

Under *O'Brien's* third prong, the County's interest in prohibiting public nudity is unrelated to the suppression of free expression. Contrary to Gatena's argument, the purpose of the Ordinance is to control the adverse effects of public nudity, not expressive activity. The *Barnes* Court found a similar public indecency statute to be unrelated to suppression of free expression, stating that

> [t]he perceived evil that Indiana seeks to address is not erotic dancing, but public nudity. The appearance of people of all shapes, sizes and ages in the nude at the beach, for example, would convey little if any erotic message, yet the State still seeks to prevent it. Public nudity is the evil the States seeks to prevent, whether or not it is combined with expressive activity.

*Barnes*, 501 U.S. at 571, 111 S.Ct. 2456.[13] The Ordinance's findings reflect that pub-

---

10. *See, e.g., Renton v. Playtime Theatres*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (upholding a city's zoning ordinance designed to prevent the occurrence of harmful secondary effects, including the crime associated with adult entertainment, by limiting the area in which adult films could be shown).

11. *See International Eateries of America, Inc. v. Broward County*, 941 F.2d 1157, 1160–61 (11th Cir.1991), *cert. denied*, 503 U.S. 920, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992) ("[I]n order to uphold a statute regulating nude dancing, it is still necessary after *Barnes* that the statute meet the secondary effects test of *Renton*.")

12. Implicit in this Court's finding that the instant Ordinance serves a substantial and important governmental interest is the Court's additional determination that the Or-

dinance is rationally related to a legitimate government purpose. Thus, the Court rejects Gatena's arbitrary and capricious challenge without further discussion. *See Villas of Lake Jackson, Ltd. v. Leon County*, 121 F.3d 610, 614 (11th Cir.1997) (arbitrary and capricious due process claim fails because the ordinances challenged are rationally related to a legitimate governmental interest).

13. In concluding that the Indiana statute was unrelated to the suppression of expression, Justice Souter reasoned that:

> [b]ecause the State's interest in banning nude dancing results from a simple correlation of such dancing with other evils, rather than from a relationship between the other evils and the expressive component of the dancing, the interest is unrelated to the suppression of free expression.... [T]he

lic nudity is the perceived evil which Orange County seeks to address. *See* OCC § 26–26(c)(6) ("Without regulation, appearing nude in a public place which is not a public place provided or set apart for nudity constitutes harmful conduct.") In fact, the Ordinance's incidental nudity exemption attempts to save some forms of expressive nudity which constitutionally cannot be prohibited. The Court finds that the County's substantial and important governmental interest in protecting order and morality and in combating the harmful secondary effects associated with adult nude dancing is unrelated to the suppression of free expression. *See Café 207,* 856 F.Supp. at 644.

Finally, the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. The Ordinance's implicit requirement that nude dancers wear a scant amount of clothing has been approved as the "bare minimum" necessary to achieve the government's purpose. *See Barnes,* 501 U.S. at 572, 111 S.Ct. 2456. Because the definition of "nude" in the Ordinance is worded virtually identically to the definition of "nudity" in the Indiana statute construed in *Barnes,* the rationale of *Barnes* with respect to *O'Brien*'s fourth prong applies in the case at bar. Accordingly, the Court finds that section 26–26 of the Orange County Code constitutionally regulates the conduct of public nudity, despite its incidental limitations on some expressive activity. Therefore, Gatena's First Amendment challenge to the Ordinance fails.

### D. The Ordinance's "bona fide" exemption language is not vague.

■ Gatena complains that the "bona fide live communication" exception contained in the instant Ordinance is unconstitutionally vague. In *Café 207,* Judge Hodges examined whether almost identical

language in the St. Johns ordinance was vague, Judge Hodges determined that

[t]he exception was clearly intended to stake out those theatrical performances involving nudity with artistic value so as to be non-obscene and within the protection of the First Amendment. Merely because it is impractical if not impossible to precisely describe in words all of the types of nude performances falling within the protection of the First Amendment does not make the exception unconstitutionally vague.... [A]n articulated exception in an anti-nudity ordinance which is plainly intended to carve out non-obscene and therefore protected displays of nudity in artistically valuable theatrical performances cannot be condemned for facial vagueness, otherwise the obscenity laws, which must undertake the same chore (i.e., carving out non-obscene matter per *Miller* [*v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)] either as written or as construed) would necessarily suffer the same condemnation.... I conclude that the Ordinance is not unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment.

*Café 207,* 856 F.Supp. at 650 (footnote omitted). The Eleventh Circuit adopted Judge Hodges' reasoning. Accordingly, Gatena's identical vagueness challenge fails. *See Café 207 v. St. Johns County,* 66 F.3d 272, 273 (11th Cir.1995).

### V. Conclusion.

Based on the foregoing, it is ORDERED as follows:

1. Defendant, Orange County's Motion for Final Summary Judgment (Doc. 61), filed July 20, 1999, is GRANTED.

2. Ms. Gatena's Motion for Summary Judgment (Doc. 41), filed July 1, 1999, is DENIED.

---

"secondary effects" justification [here] means that enforcement of the Indiana statute against nude dancing is "justified without reference to the content of the regulated [expression]," *ibid.* (emphasis omitted),

which is sufficient, at least in the context of sexually explicit expression, [footnote omitted] to satisfy the third prong of the *O'Brien* test.

*Id.* at 586, 111 S.Ct. 2456.

3. Ms. Gatena's Motion to Exclude County Affidavit of Christopher R. Testerman and Reference in County's Response to Summary Judgment or, in the Alternative, Request to Consider County Charter, Section 704 In Light of County's Argument (Doc. 63), filed August 2, 1999; and Defendant, Orange County's Motion in Limine as to Affidavits and Testimony of Brad Conway and Bill Miller Regarding Plays Within the City of Orlando and Memorandum of Law (Doc. 73), filed October 1, 1999, are DENIED as moot. The Court has examined the affidavits and determines that none of the facts presented in the various affidavits is relevant to the Court's analysis on the parties' summary judgment motions.

4. Gatena did not oppose Defendant, Orange County's Second Request for Judicial Notice, Notice of Filing and Memorandum of Law (Doc. 73), filed October 1, 1999. Accordingly, the request is GRANTED.

5. Defendant, Orange County's Motion for Rule 41(b) Dismissal, or, Alternatively Rule 16(f) Sanctions (Doc. 80), filed October 18, 1999, is GRANTED in part and DENIED in part. The motion is DENIED insofar as it seeks dismissal of the action. The motion is GRANTED insofar as it seeks sanctions under Rule 16(f). The Court reserved ruling on this motion in its Order of October 25, 1999, where it found that Plaintiff's counsel, Steve Mason, failed to obey two pretrial orders. Mr. Mason's failure to comply with the Case Management and Scheduling Order and the Court's Order of September 28, 1999 resulted in a waste of judicial resources. In addition, Mr. Mason's noncompliance caused the Defendant to waste its time and expense. Accordingly, pursuant to Fed.R.Civ.P. 16(f), the Court directs Mr. Mason to pay five-hundred dollars ($500) to the Defendant.

6. The Clerk shall enter a final judgment providing that the Plaintiff, Kim Gatena, is entitled to no relief on her claims against the Defendant, County of Orange, and further providing that the Defendant shall recover its costs of action.

7. The Clerk shall close this case.